JAMES B. HAWKINS, and others *vs.* OSCAR H. HERSEY.

Oxford. Opinion April 24, 1894.

*Conditional Sale. Action. Damages. Fixtures. Payment.*

When machinery is sold and placed in a building for the purpose of making it available as a manufactory, but under an agreement between the seller and buyer that the title shall remain in the former until it is wholly paid for, it may properly be deemed personal property as against a mortgagee who

with full knowledge consents to the arrangement; and may be removed by the seller retaining title thereto, although it has the character of a fixture and has been permanently annexed.

In such a case, an action of trover may be brought by the vendor against a third person who has purchased of the conditional vendee; and the plaintiff is still entitled to recover the full value of the property at the time of the conversion, although but a single dollar of the purchase money remains unpaid.

*Held,* that under the terms of the contract between the vendor and the vendee in this case, the sum of $375, admitted to have been applied to the payment of the machinery, may properly be applied to the earliest items delivered after the date of the contract, amounting to the sum of $369.31. As the plaintiffs no longer had title to these articles they cannot recover for them in this action.

ON MOTION.

This was an action of trover to recover the value of certain machinery, specified and enumerated in the schedule annexed to the declaration, and which the plaintiffs alleged had been converted by the defendant. The jury returned a verdict for the plaintiffs, the damages to be assessed by the court according to the agreement of the parties.

The defendant brought the case into the law court upon a general motion for a new trial. At the argument, the parties stipulated that the full court should hear the case as upon report and determine what number of articles, if any, had been converted; the damages to be assessed therefor by G. A. Wilson, Esq., agreed upon as assessor of damages.

The case is stated in the opinion.

*John P. Swasey,* and *Edgar M. Briggs,* for plaintiffs.
*Geo. D. Bisbee,* for defendant.

SITTING: PETERS, C. J., WALTON, EMERY, FOSTER, WHITEHOUSE, JJ.

WHITEHOUSE, J. The plaintiffs bring this action of trover to recover the value of certain machinery delivered to Harlow and Son of Buckfield, during the year 1890, under a contract with them by which the machinery was to remain the property of the plaintiffs until paid for, and alleged to have been sold and converted by the defendant.

It appears that Harlow and Son had previously been operating a steam mill in Buckfield for the manufacture of toothpicks, but became embarrassed in business for the want of sufficient capital. Thereupon the defendant united with six others in a praiseworthy effort to encourage the productive industry of the community by aiding the firm with a loan of $1200, secured by a mortgage of the mill property with its machinery and fixtures, signed by J. M. Harlow, a member of the firm of Harlow and Son, and sole owner of the mill, containing the following clause : "Together with all tools, machines and attachments and machinery of every kind hereafter used in connection with said mill." But this business being still unsuccessful, Harlow and Son suspended operations, and made the contract in question with the plaintiffs for the manufacture of wooden cutting-blocks and meat blocks. By the terms of this agreement the plaintiffs were to furnish suitable machinery for the manufacture of these goods, retaining title thereto until wholly paid for, and also to purchase and consign to Harlow and Son lumber for such manufacture to the amount of $1000, the same to remain the property of the plaintiffs. It was also stipulated in the contract that the plaintiffs might deduct thirty-five per cent of the amount due Harlow and Son for the manufacture of the blocks, twenty-five per cent to be used toward the payment of the lumber furnished and ten per cent to be applied towards the payment of the machinery which Harlow and Son had agreed to purchase on the terms stated.

In the report of the case it is expressly admitted that, "the machinery sued for was put into the mill and set up, and that it became fixtures under the ordinary rules relative to machinery."

It is a well-recognized rule that when articles of personal property which are specially adapted and designed to be used in connection with the realty and essential to the convenient and profitable enjoyment of the estate are affixed to it with an intention to make them a permanent accession to the land, they become a part of the realty though not so fastened as to be incapable of removal without serious injury to themselves or

the freehold. *Pope* v. *Jackson*, 65 Maine, 162 ; *Strickland* v. *Parker*, 54 Maine, 263. So when machinery is sold and placed in a building for the purpose of making it available as a manufactory and permanently increasing its value for occupation, an agreement between the seller and buyer that the title shall remain in the former until it is wholly paid for, will not bind or affect the mortgagee of the realty without notice, and such machinery will pass to the mortgagee as a part of the realty. *Bank* v. *Exeter Works*, 127 Mass. 542 ; *Thompson* v. *Vinton*, 121 Mass. 139 ; *Hunt* v. *Iron Co.* 97 Mass. 279. But as against a mortgagee who with full knowledge consents to the arrangement and while in possession under his mortgage treats the machinery as personal property, it may properly be considered as a chattel removable by the seller retaining title thereto, although it has the character of a fixture and has been permanently annexed. *Bartholomew* v. *Hamilton*, 105 Mass. 239. So also articles which are merely incidental to the particular business carried on at the time, and not designed to be permanent adjuncts to the building, and not essential to the profitable occupation of it, will be deemed personal property, although the advantageous use of them may require a fastening by nails or bolts. *McConnell* v. *Blood*, 123 Mass. 47.

In this case it appears, from the testimony of one of the plaintiffs, that before the machinery was delivered to Harlow and Son, he made a special inquiry of the defendant in regard to the mortgage on the mill, and was assured by him that it would, "in no way interfere with any transaction he might have with Mr. Harlow in relation to supplying him with such machinery as was necessary, that would have to go into the building." The defendant admits that he had a conversation with this plaintiff in the presence of Mr. Harlow in regard to the machinery required for the new line of work, and that he agreed, "to take no advantage under the mortgage ;" but he claims that only four machines were mentioned as necessary for the manufacture of the blocks and that he heard nothing said about the gearing and other articles named in the writ. A careful examination of all the testimony on this point, viewed

in the light of the situation and circumstances, the obvious interests of the parties and their subsequent conduct, leads irresistibly to the conclusion that the plaintiffs acted upon the belief, and were justified in so doing that the rights of the mortgagees were waived as to all machines put in by them that might be essential to the profitable conduct of the business of manufacturing blocks in that mill; and as to all such gearing and attachments as would be reasonably necessary to make the machines available and operative for the purpose for which they were designed. The mortgagees had a loan of $1200, on a mill then standing idle. Their security would not only not be impaired but its value largely increased by the establishment of a permanent business there. It was manifestly for their interest to have suitable and sufficient machinery placed in the mill to carry on the business in an advantageous and successful manner; for thus the machinery thereafter furnished could soon be wholly paid for by ten per cent of the earnings of Harlow and Son, according to the terms of this contract, and become a part of the realty subject to the mortgage in question. It is reasonable to presume, also, that this understanding extended to all such shafting and gearing as might be required to enable them to set up and operate the machinery thus furnished. If in the course of six or seven months, after the four machines first put in had been tested, it was found from experience that a more profitable business could be done by the aid of a "Daniel's Planer," the plaintiffs were authorized to assume that it could be furnished under the same arrangement as the others. This is confirmed by the subsequent conduct of the parties, for it appears that in the discussions respecting the plaintiff's claim to the machinery, no distinction in this respect was made between the four machines set up in January and February, and those furnished at a later date.

But this enterprise also proved unsuccessful, and in March, 1891, Harlow surrendered possession of the property to the mortgagees, and the defendant soon after removed from the mill and sold all the Hawkins machines with the pulleys, shafting, belting and hangers pertaining to them, and received a check therefor in his own name.

It affirmatively appears, from the testimony on both sides, that by virtue of the provision in the contract for the appropriation of ten per cent of the earnings of Harlow and Son to the payment of the machinery furnished, the sum of $375 had been actually applied by the plaintiffs to that account. But, by the terms of the contract, the entire payment of the purchase money was made a condition precedent to the passing of the title to any of the machinery purchased; and in such a case it is settled law in this State that, in an action of trover brought by the vendor against a third person who has purchased of the conditional vendee for value received, the plaintiff is still entitled to recover the full value of the property at the time of the conversion, although but a single dollar of the purchase money remains unpaid. *Everett* v. *Hall*, 67 Maine, 497; *Brown* v. *Haynes*, 52 Maine, 578.

Under these circumstances, an exact compliance with the provisions of the contract between the plaintiffs and Harlow and Son may properly be insisted upon in behalf of this defendant. The contract bears date January 24, 1890, and expressly refers to all machinery, "which *shall be* consigned" to the Harlows, and provides for an appropriation of the ten per cent in question to "said machinery." It appears from the first two items in the account annexed to the writ that two machines had already been furnished under date of January 21, 1890, of the value of $130 and $80, respectively. The machinery and fixtures consigned under date of January 31, and February 11, and the machinery and articles furnished under date of March 8 (not including the "oak belting,"), amount to the sum of $369.31. Each of these items may have been the result of a special order and the subject of a separate contract. *Bennett* v. *Davis*, 62 Maine, 544. In the absence of any special directions from Harlow and Son with reference to the appropriation of the ten per cent and of any evidence from the plaintiffs showing a different appropriation, in accordance with familiar principles, the sum of $375, admitted to have been applied to the payment of machinery, must be deemed to have been applied to extinguish the earliest items in the account furnished

after the date of the contract. As to all the items above indicated, amounting to $369.31, the purchase money was thus fully paid before the commencement of this action ; and as the title to these articles was no longer in the plaintiffs they are not entitled to recover for them in this suit. Neither are they entitled to recover for the nails and glue, nor for the item of $9.20, under date of November 20, for "fitting and filing," saw. For all other items in the account the value of which is, "to be determined by G. A. Wilson, agreed upon as assessor of damages by the parties," there must be,

*Judgment for the plaintiffs.*