LAURA HAYFORD, Trustee, *vs.* THOMAS H. WENTWORTH.

Penobscot.    Opinion March 5, 1903.

97  347
e99  466

97   347
f106  162
106  163
f106  238
106  239
f106  241

*Fixtures.    Merger.    Intention.    Landlord and Tenant.    Law and Fact.    Water Closet.*

1.  The physical character of the annexation of a chattel to land or buildings does not alone determine the question whether the chattel annexed is merged in the realty.

2.  To effect a merger of a chattel into realty there must be (1) an actual physical annexation, at least by juxtaposition, to the realty, (2) an adaptability for use with that part of the realty to which it is annexed, and (3) an intention by the party annexing to make it a permanent accession to the realty. This intention however is not the unrevealed, secret intention but the intention fairly deducible from all the circumstances.

3.  The question of the existence of either of these requisites, including the intention, is a question of fact, or, at least, of mixed law and fact.

4.  The burden of showing the existence of these requisites, including the intention, is upon the party claiming a merger.

5.  A tenant of a building or of an office, in the absence of objection from the landlord, has the right to annex temporarily thereto chattels for his own comfort or convenience and may remove them during his term, if such annexation and removal do not materially injure the realty.

6.  "A wash-down syphon water closet" and its appurtenances, put into a business office in the usual manner by a tenant at will for his own use and which can be removed without material injury to the realty, does not become merged in the realty unless it was so put in with an intention to make a permanent accession to the realty.

7.  The fact that the water closet was connected with a soil pipe also put in by the tenant and left by him affixed to the realty, does not prevent his disconnecting and removing the water closet.

8.  A tenant so putting in a water closet may transfer the same to his successor in the tenancy and the last tenant thus acquiring it may remove it during his term.

Exceptions by defendant. Sustained.

Trespass on the case for removing and carrying away from the plaintiff's premises a water closet bowl.

The evidence showed that on January 8th, 1897, upon an order of one Newcomb, then having a desk, assisted by a female stenographer, in the office described in the plaintiff's writ, occupied by the defendant and Judge Vose, and under their advice, they paying one-third each therefor, a skilled plumber put in a soil pipe and set up a "wash-down syphon water closet," in a small closet, a part of the occupied premises, into which the Holly water had previously been introduced for drinking purposes and for a wash bowl. Cost of closet set up, fifty-five ($55.00) dollars, and fourteen ($14.00) dollars for soil pipe and connections with sewer.

The evidence showed that said closet was set up in the usual manner, the flanges on the upper end of the soil pipe being flush with the floor of the closet, to which flange the bowl of the new closet was secured by bolts and nuts.

The evidence showed that said defendant and Vose were the tenants till December 31st, 1897, when the said Vose vacated, leaving said defendant sole tenant, he (the said defendant) having purchased the interest of said Newcomb and Vose in the said closet.

The evidence showed that the defendant's tenancy continued till July 1st, 1900, and that on the 28th day of June, 1900, he caused the said water closet to be removed in a manner which the plumber, called by the plaintiff, testified to be the customary, usual and safe method, by the same plumber who set it up, leaving the soil pipe intact but securely plugged with newspaper, (which said plumber testified was the customary method) to which said soil pipe the plaintiff attached another water closet.

The only evidence that the defendant did not intend the water closet to remain a permanent fixture was that he erected it upon premises which he might be obliged to quit at any time in thirty days, and the fact that before the expiration of his term of tenancy he did remove it.

The following instructions were requested by the defendant:

First. "Was this closet so attached that its removal caused

material damage to the realty ? ' If it was not so attached, then you will come to the question of the intention of the party or parties when it was set up. Did they intend it should remain as a part of the realty or only for their better convenience and accommodation while occupying the premises ?"

Second. "If the jury find that its removal did not cause material damage to the realty, and that it was not the intention of the party or parties to leave the closet after the expiration of their tenancy, then as a matter of law, the defendant had a right to remove it before the expiration of his term of tenancy."

The court refused to give the instructions asked for by the defendant and instructed the jury as follows:—

"I decline to give you these instructions, gentlemen, because it seems to me that there being no controversy, no question of fact, as to the method in which the closet, and the plumbing necessary for the closet were put there, I instruct you as a matter of law that that becomes a fixture, a part of the realty. So that this defendant, Mr. Wentworth, is liable for having removed that closet."

To which instructions and refusal to give instructions the defendant took exceptions.

*J. R. Mason,* for plaintiff.

*L. A. Barker,* for defendant.

SITTING: EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, SPEAR, JJ.

EMERY, J. Under what circumstances articles once chattels lose their character as chattels and become merged into realty, has been a somewhat troublesome question, decided differently by different courts, and differently by the same court at different periods. The trend of judicial opinion, however, has been away from a tendency toward merger, till now there is tendency toward non merger. Without taking space here to trace the steps in this development of the law in such cases (a task which has been well done in some of the opinions below cited) it is sufficient to say, that courts now very generally discard the old test of the physical character of the annexation and hold

that a chattel is not merged in the realty, unless (1) it is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof, (2) it is adapted to and usable with that part of the realty to which it is annexed, and (3) it was so annexed with the intention, on the part of the person making the annexation, to make it a permanent accession to the realty. *Readfield T. & T. Co.* v. *Cyr*, 95 Maine, 287, 289, and cases there cited. For other authorities to the same effect, see *Baker* v. *Fessenden*, 71 Maine, 293; *Voorhees* v. *McGinnis*, 48 N. Y. 282; *Dana* v. *Burke*, 62 N. H. 627; *McMillan* v. *N. Y. Water Proof Paper Co.*, 29 N. J. Eq. 610; *Teaff* v. *Hewitt*, 1 Ohio St. 511, 59 Am. Dec. 645; *Hill* v. *Wentworth*, 28 Vt. 428, 437; *Langston* v. *State*, 96 Ala. 44, (11 So. Rep. 334); *Hill* v. *Sewald*, 53 Pa. St. 271, 91 Am. Dec. 209; *Ames* v. *Trenton Brewing Co.*, 57 N. J. Eq. 347, 38 Atl. Rep. 858, affirmed in 45 Atl. Rep. 1090; *Seeger* v. *Pettit*, 77 Pa. St. 437, 18 Am. Rep. 452. Further, as said in *Readfield T. & T. Co.* v. *Cyr*, supra, "while it would be impossible to reconcile all the cases upon this subject, yet the modern and most approved rule appears to be to give special prominence to the intention of the party making the annexation."

An evident corollary of the modern rule thus established is, that the burden of showing the existence of these requisites for merger, including the intention, is upon the party claiming the chattel to have become merged in the realty. *Hill* v. *Wentworth*, supra; *Baker* v. *Fessenden*, 71 Maine, 293; *Munroe* v. *Armstrong*, 179 Mass. 165; *Knickerbocker Trust Co.* v. *Penn. Cordage Co.*, (N. J. Eq.) 50 Atl. Rep. 459.

As to the intention, of course it is not the unrevealed, secret intention that controls; it is the intention indicated by the proven facts and circumstances, including the relation, the conduct and language of the parties; the intention that should be inferred from all these. *Readfield T. & T. Co.* v. *Cyr*, supra. Thus in *Munroe* v. *Armstrong*, supra, where a plumber as sub contractor put plumbing material in a house in the course of its construction, it was held to be a necessary inference that he intended the materials to become a part of the realty. So where the chattel is so annexed that it cannot be removed without material injury to the realty, it would ordinarily be a neces-

sary inference that the intention was not to remove it.   So where the chattel is annexed by a stranger having no interest nor right of occupancy in the realty, he will ordinarily not be heard to say that he intended a trespass.   So a special agreement, or a known custom, may conclusively determine the question.   Nevertheless, the intention is a fact which must be proved either directly or by inference from other proven facts. · Whether there was such an intention is a question of fact, or at least of mixed law and fact, for the jury in an action at law where there is any conflict of evidence or more than one possible logical inference from undisputed facts.   *Seeger* v. *Pettit,* 77 Pa. St. 437; *Turner* v. *Wentworth,* 119 Mass. 459; *Allen* v. *Mooney,* 130 Mass. 155; *Phila. M. & T. Co.* v. *Miller,* (Wash.) 44 L. R. A. 559.   In *Ames* v. *Trenton Brewing Co.,* supra, the fact that the owner of the chattels, before annexing them to the building leased to him, had agreed to give a chattel mortgage of them to the person from whom he had bought them was held proper to be taken into consideration in determining the question of his intention as to permanency of annexation.   In *Seeger* v. *Pettit,* supra, the tenant, for the purpose of negativing any inference of intention to make the articles annexed by him a part of the realty, was held entitled to show that he had included them as his property in his schedule of assets.

Turning now to the bill of exceptions in the case at bar, we think the practical effect of the ruling complained of was to wholly exclude from consideration the question of intention, and indeed all other questions except the effect of the undisputed method of the original physical annexation, and to hold as matter of law that this method alone as described in the bill of exceptions made the chattel a part of the realty and passed the title to the owner of the realty. Unless, therefore, it is a necessary inference from the method of annexation that the defendant and his associates and vendors intended to make the annexation permanent as a part of the realty, the ruling was clearly erroneous and prejudicial.

It does not seem to us that such an inference is necessary, even if permissible.   The chattel was of substantial value in itself, having cost $55.   The defendant and his associates were then tenants at

will to the plaintiff and liable to be deprived of· the use of the leased office within thirty days after annexing the chattel. The law is now liberal to such tenants. The chattel (a "wash-down syphon water closet" and its appurtenances) was not annexed in the construction, enlargement or repairs of the office. It was not designed or made for this particular office, or place, nor for any particular place. It was a chattel already made for the general market, and kept in stock and separately by itself an object of sale and purchase in the general market. It could be placed and used in any room, or building, and transferred from building to building and from place to place in the same building. It had a market value before annexation and a market value after removal. Being such a chattel, the tenants brought it into the leased office and set it up, not to enlarge, strengthen or repair the office rooms, but exclusively for their own use and comfort. As one of the three vacated the premises he sold his interest in the water closet to those remaining and they purchased it during their occupancy. The last tenant removed it during his right of occupancy by merely unscrewing nuts and screws and withdrawing bolts and nails, without damage to the chattel or the realty so far as appears.

Taking into account all these circumstances and the rule that the burden of proof of showing the intention to make the annexation permanent, is upon the plaintiff, we think that reasonable men might be of the opinion (and not without reason) that an intention to permanently annex the chattel and make it a part of the realty was not shown and did not exist. This being so, the exceptions must be sustained and a new trial granted even if our own opinion were different.

The citation of some authorities may perhaps enforce our reasoning and make our conclusion more acceptable. In Tyler on Fixtures, 385, it is said: "As a rule any fixture made by a tenant for his own comfort, convenience or pleasure, may be removed by him during his term, provided the same can be removed without serious injury to the realty the same as in cases of fixtures for the purposes of trade, or manufactures." In Taylor on Landlord and Tenant (8th ed.) at the end of § 544 it is said: "In modern times the rule is understood to be

that upon principles of general policy a tenant whether for life, years or at will, is permitted to carry away all such fixtures of a chattel nature as he has himself erected on the demised premises for the purpose of ornament, domestic convenience, or to carry on trade, provided the removal can be effected without material injury to the freehold." In § 547 domestic fixtures are defined to be "such articles as a tenant attaches to a dwelling-house in order to render his occupation more comfortable or convenient and may be separated from it without doing substantial injury." This definition would seem to be as applicable to an office room as to a dwelling-house. In *Gaffield* v. *Hapgood,* 17 Pick. 192, 28 Am. Dec. 290, the court said that a fire frame fixed in a common fireplace with bricks on the sides laid in between the sides of the fire frames and the jambs of the fireplace and the facing plastered over, remained a chattel, which a tenant so affixing could remove during his term. In *Guthrie* v. *Jones,* 108 Mass. 191, gas fixtures screwed upon the gas pipes of a room were held to remain chattels as between landlord and tenant. In *Wall* v. *Hinds,* 4 Gray, 256, 64 Am. Dec. 64, a cistern and sinks fastened to the floor by nails or set in the floor by cutting away boards; water pipes fastened by hooks driven into the plastering and walls and passing through holes cut by the tenant in the floors and partitions; gas pipes passing from the street into the cellar and thence up through the floor and branching into different rooms through holes cut in the floor and partitions, and in some cases through ornamental ceiling centre-pieces, by the tenant for that purpose, the pipes being kept in place by metal bands fastened to the walls and ceilings; were all held to remain chattels. In *Towne* v. *Fiske,* 127 Mass. 125, 34 Am. Rep. 353, a portable iron furnace was set upon the earth in the middle of the cellar, and then the cellar bottom was covered with concrete up to and around the furnace; the furnace was connected by hot air pipes with registers in the various rooms set in soapstone collars; gas pipes were also screwed to gas pipes fixed in the house. All these having been put in the house by the person occupying under a verbal contract to purchase were held to remain chattels. In *Phila. M. & T. Co.* v. *Miller,* (Wash.) 44 L. R. A. 559, a mortgagor placed

in his dwelling-house a porcelain bath tub standing on four legs and connecting in the usual manner with the soil pipes, and also a hot water heater connected therewith by the usual methods of plumbing. The case was submitted to a jury who found that the articles remained chattels, and the court rendered judgment on the verdict. In the opinion stress was laid upon the circumstance that none of the articles were made or fitted for that particular house, but all were made up and kept in stock by dealers to be sold for and set up in any house. In *Seeger* v. *Pettit,* supra, gas fixtures, platform scales, a walnut railing, a stair case, and some banisters, a coal bin, and some shelving were put into leased premises by different tenants at different times, each outgoing tenant transferring his interest in them to his successor. A ruling that these articles could not be removed by the last outgoing tenant was held erroneous. The procedure in this case was much like that at bar. The landlord brought an action at law against the outgoing tenant for removing these articles from the building. The case was tried to a jury and evidence adduced pro and con. The presiding justice ruled as matter of law that the articles were not removable by the defendant. This was held to be error. The court said: "The matter of fixtures should have been left to the jury as a question of intention." In *Hanson* v. *News Pub. Co.,* ante, 99, (the latest expression of this court on this subject) partitions placed in a store by a tenant for his own convenience, and nailed to the floor and screwed to the walls were held not to have become a part of the realty.

It remains to notice a few other points made by the plaintiff in his brief.

1. He claims that the water closet was put in by Newcomb, a stranger and hence as a trespasser. It can be inferred, however, that Vose and Wentworth had hired the entire office room and its appurtenances and had let desk room therein to Newcomb without objection from the plaintiff, so that Newcomb was not a trespasser but a lawful occupant. It was not a case of a tenant at will undertaking to assign his tenancy without the landlord's permission. The three, Vose, Wentworth and Newcomb, were in lawful occupation under

the original lease or hiring. The water closet was put in by them jointly, though Newcomb may have been the only active agent. As to the want of express permission from the plaintiff to put in such a closet, it is enough to say that in the absence of notice to the contrary, as in this case, a tenant has implied permission to put into the leased tenement such articles as will conduce to his health, comfort or convenience without injury or danger to the realty. *Hanson* v. *News Pub. Co.,* supra.

2. The plaintiff urges that the chattel annexed was the water closet and soil pipe combined, that the soil pipe was certainly irremovable and was in fact left fixed in the building, and hence that the water closet must remain with it. It does not appear, however, that either the water closet or the soil pipe were made to order, the one for the other, or that they were especially adapted the one to the other. It is common knowledge that soil pipes and water closets are made in standard sizes and styles for the general market independently of each other. They are manufactured and dealt in separately. Any water closet can be used with any soil pipe of the proper size. Other water closets could have been connected with this soil pipe and, indeed, another was connected by the plaintiff after this one had been removed. We have no occasion to say whether the defendant could have removed the soil pipe also, but his leaving it did not preclude him from disconnecting and removing the water closet any more than leaving gas pipes in place precludes a tenant from removing the gas fixtures he had connected with them.

3. The plaintiff also urges that the removal of the water closet without the soil pipe in fact caused an injury to the realty in that the upper end of the soil pipe was not effectually closed. But the question of injury to the realty, if any such is suggested by the evidence, was excluded from consideration. The ruling was that the original mode of annexation determined the whole case.

The exceptions must be sustained and the case sent back for another trial.

*Exceptions sustained,*