SOPHIA E. RODERICK *vs.* PARKER M. SANBORN.

Somerset.    Opinion November 26, 1909.

*Fixtures.   Chattels.   Annexation.   Intention.   Storm Windows and Doors.*

It is well settled now that whether a chattel has become a part of the realty is a mixed question of law and fact.

It is now generally conceded that the old tests of physical character of annexation are discarded, and the modern trend of authority is adverse to any arbitrary or fixed rule, by which it may be determined whether a chattel is or is not a fixture.

A chattel is not merged in the realty unless (1) it is physically annexed, at least by juxtaposition to the realty or some appurtenances thereof: (2) it is adapted to and usable with that part of the realty to which it is annexed and (3) it was annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty.

In order to be merged in the realty, it is not necessary that a chattel should be physically fastened to the realty at all times. There may be constructive as well as physical annexation.

The most important element to be established tending to prove that a chattel has been merged into a fixture is the intention with which the party provided its use.

The intention with which a chattel is annexed to the realty is the intention which the law deduces from all the circumstances of the annexation.

A chattel need not be absolutely necessary to the completeness of a dwelling if obviously adapted and intended to be used with it.

Where the plaintiff brought an action of trover to recover the value of certain outside windows and outside doors, commonly known as storm windows and storm doors, alleged to have been converted by the defendant, and which said windows and doors were fitted to and used upon a dwelling house on the premises owned by the plaintiff, and the plaintiff mortgaged the premises to the defendant at a time when the windows and doors were actually attached to the house, and afterwards at a time when the windows and doors were on the premises in the stable chamber, the plaintiff conveyed the premises to the defendant by deed of warranty, *held* that the windows and doors had become a part of the realty and the title thereto was vested in the defendant.

On report.    Judgment for defendant.

Trover to recover the value of certain outside windows and doors, commonly known as storm windows and storm doors, alleged to have been converted by the defendant. Plea, the general issue. An agreed statement of facts was filed and the case reported to the Law Court for determination.

The case is stated in the opinion.

*E. O. Greenleaf*, for plaintiff.

*George W. Gower*, for defendant.

SITTING:    WHITEHOUSE, SAVAGE, SPEAR, CORNISH, KING, BIRD, JJ.

SPEAR, J.    This is an action of trover to recover the value of certain outside windows and outside doors, commonly known as storm windows and storm doors, alleged to have been converted by the defendant.    The plaintiff claims them as her own personal property and the defendant claims that they passed to him by virtue of a mortgage and final deed to him from the plaintiff.    The case is reported upon the agreed statement in which it appears that the plaintiff's husband purchased the premises in question in 1904, and conveyed them to his wife in 1908 in which sale the doors and windows were included but not mentioned in the deed.    The title to the real estate is not further involved.    That part of the agreed statement pertinent to the issue is as follows:

"Said Joseph A. and Sophia E. Roderick immediately took possession of the premises with the intention of making it their home and lived thereon until on or about October 8, 1908.

"Said Joseph with the purpose of making the place more comfortable for use, procured the outside windows and doors to be made for the house and specially fitted to it, the doors and windows being prepared in the usual manner for fastening to the house by means of screws passing through hinges on the doors and into the frame of the door casing, and by means of screws passing through the double window-frames and into the window casings of the house. Each window-frame was fitted to a particular window casing on the building, and the window casings were numbered consecutively from 1 upwards, and the double windows were numbered to correspond, so that it might be readily determined to which window casing each outside or double window was designed to be attached and used.

"Said outside doors and windows were attached by means of screws as aforesaid and used on the house during each winter that it was occupied by said Roderick, and up to October 8, 1908. In the spring of each year they were removed and stored in the stable on the premises where they remained until attached to the house the next winter, when they would be replaced in their respective places on the building until the following spring."

It also appears that in February, 1907, when the plaintiff mortgaged the premises to the defendant, the doors and windows were then actually attached to the house; and that in October 1908, when the plaintiff conveyed the premises to the defendant by warranty deed, the doors and windows were then upon the premises in the stable chamber.

The only question involved is whether the windows and doors under this statement of facts became a part of the realty so that the title vested in the defendant under his deed of the premises, or remained personal property, the title to which did not pass with the deed.

Whatever the early understanding, it is well settled now that whether a chattel has become a part of the realty is a mixed ques-

tion of law and fact. In the case before us the facts are admitted and from these facts is to be inferred the legal character of these doors and windows. It is now generally conceded that the old tests of physical character of annexation are discarded, and the modern trend of authority is adverse to any arbitrary or fixed rule, by which it may be determined whether a chattel is or is not a fixture. It is now, however, held that a chattel is not merged in the realty unless, in the language of *Hayford* v. *Wentworth*, 97 Maine, 347, (1) it is physically annexed, at least by juxtaposition to the realty or some appurtenances thereof; (2) it is adapted to and usable with that part of the realty to which it is annexed and (3) it was annexed with the intention on the part of the person making the annexation to make it a permanent accession to the realty. See also Cyc. 19, 1036. In order to meet the first of these conditions it is not necessary that the chattel should be physically fastened to the realty at all times. There may be constructive as well as actual annexation. It was said in *Farrar et al.* v. *Stackpole*, 6 Maine, 154, "Although the being fastened or fixed to a freehold is the leading principle in many of the cases in regard to fixtures it has not been the only one. Windows, doors and window shutters are often hung not fastened to a building; yet they are properly part of the real estate and pass with it; because it is not the mere fixing or fastening, which is regarded, but the use, nature and intention." The controversy in this case was whether a chain used in a saw mill passed with a deed of the mill as a part of the realty. It was decided in the affirmative although the chain was not necessarily fastened to any part of the mill. "The civil law allows movable property to be made immovable by destination. Corresponding to this is the annexation by intention of the recent common law. Where such annexation is allowed it is sufficient that the owner intends to make the chattel a part of the realty. It is not necessary to use force; it is enough to exercise the will; if this is duly manifested the article is dedicated to the realty and its status as personalty has ceased. These two methods of annexation are sometimes called actual and constructive annexation." In the note under the section is cited the English rule. "In the leading English case it is said that what

constitutes annexation sufficient to make the chattel a part of the realty must depend upon the circumstances of each case and mainly on the circumstances as indicating the intention, viz: the degree of annexation and the object of annexation." A reference to the statement of facts leaves little doubt that the manner in which the doors and windows were actually and intended to be fastened to the house for use satisfies the degree and kind of annexation required by the law.

To establish the requirements of the second condition it is necessary to show that the doors and windows were adapted to and used with that part of the realty to which they were annexed. Discussion upon this proposition would be superfluous. The agreed statement is conclusive. It conceded that "Said Joseph with the purpose of making the place more comfortable for use, procured outside windows and doors to be made for the house and specially fitted to it." The rest of the paragraph emphasizes the proof of adaptability but this is sufficient.

The third and most important element to be established tending to prove that a chattel has been merged into a fixture is the intention with which the party provided its use. This principle has been very recently stated in *Portland* v. *New Eng. T. & T. Co.*, 103 Maine, 240, in this language: "The intention with which an article is annexed to the freehold has come to be recognized as the cardinal rule and most important criterion by which to determine its character as a fixture, and the attendant facts and circumstances are chiefly valuable as evidence. 'This controlling intention is not the initial intention at the time of procuring the article in question, nor the secret intention with which it is affixed, but the intention which the law deduces from all the circumstances of the annexation.'" The same idea is stated in *Hayford* v. *Wentworth*, supra, in this language: "As to the intention, of course it is not the unrevealed, secret intention that controls; it is the intention indicated by the proven facts and circumstances, including the relation, the conduct and language of the parties; the intention that should be inferred from all these." We think the inference from the agreed facts is conclusive upon this point. Joseph A. Roderick

who procured the windows and doors, with his wife "took possession of the premises with the intention of making it their home," and lived there over four years using these windows and doors as they were designed to be used, during the whole period. They were "made for the house and especially fitted to it." "Each window frame was fitted to a particular window casing on the building and the window casings were numbered consecutively." They were procured "with the purpose of making the place more comfortable for use." A chattel need not be absolutely necessary to the completeness of the dwelling house if obviously adapted and intended to be used with it. *Bainway* v. *Cobb*, 99 Mass. 457. The last phrase quoted from the agreed statement seems to bring the case within the doctrine of *Bainway* v. *Cobb*. The ordinary meaning of the language of this statement shows that these doors and windows were obtained for the house and not for the occupants; to make the place more comfortable for use, not for A or B, but for any one who might have occasion to occupy it.

We cannot avoid the conclusion that these doors and windows were procured for permanent use with the house, added to the value of its use and enured to the benefit of the estate.

*Judgment for the defendant.*