SADIE STIEBEL *vs.* BEAUDETTE & GRAHAM COMPANY
& others.

Suffolk.    March 5, 1931. — March 9, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Real or Personal Property. Mortgage,* Of real estate. *Sale,* Conditional.

Subsequent to the giving of a mortgage upon an apartment building, the owner thereof purchased under a contract of conditional sale refrigerating apparatus, which consisted of a compressor and motor set in the cellar, but not attached to the floor, an electric control device from the motor to the wall of the cellar where it connected with the electrical system of the building, small pipes running from the compressor through holes bored in the floors of the building to the units in the apartments, and refrigerating boxes of ordinary size, to instal which it was necessary to cut into the shelving. The whole apparatus could be removed from the premises in a short time without any substantial damage or injury to the building. In a suit in equity by the mortgagee to enjoin the removal of such equipment after there had been default under the contract of conditional sale and possession had been taken by the mortgagee for purposes of foreclosure, it was *held,* that all such equipment remained personalty and did not come under the lien of the plaintiff's mortgage: the mortgagee had no title to such equipment and was not entitled to the relief sought with respect thereto.

The owner of the apartment building above described also purchased under another contract of conditional sale an oil heating system, consisting of a metal tank set under ground, piping running under ground from the tank to the building and then under the concrete

floor of the cellar to a point near the heating mechanism, an oil heating mechanism, which was not of great weight and was placed on the floor of the cellar near the boiler, to which its discharge pipe was attached, and an indirect water heating system attached to the boiler by pipes.  In order to remove the pipes from the tank to the heating mechanism, it would be necessary to dig a trench from the tank to the cellar and break up the concrete floor.  The mortgagee demanded that the vendor remove "the oil burning equipment."  The oil heating mechanism was removed by the person in charge of the building previous to the commencement of the suit.  In the suit the plaintiff also sought to enjoin the removal of the heating equipment.  *Held*, that

   (1) The vendor was entitled to the oil heating mechanism;

   (2) The underground tank, the pipe therefrom and the indirect water heating system had become realty and subject to the plaintiff's mortgage.

BILL IN EQUITY, filed in the Superior Court on January 21, 1930, and afterwards amended, described in the opinion.

The suit was heard by *Whiting*, J.  He found that the defendant Beaudette & Graham Company was the conditional vendor of the refrigerating and heating apparatus; and that the other defendants were assignees of Beaudette & Graham Company of portions of such property.  Other material findings are stated in the opinion.  A final decree was entered in accordance therewith.  The plaintiff appealed.

*E. L. Schoenberg*, for the plaintiff.

*J. B. Jacobs*, for the defendant Meehan, trustee in bankruptcy.

*A. A. Gillette*, for the defendants The National Shawmut Bank of Boston and another.

RUGG, C.J.   This is a suit in equity, by a mortgagee in possession of real estate, to enjoin the removal of certain property from the buildings.  The relevant facts are these: On March 20, 1928, the owner for a valuable consideration mortgaged the premises to the plaintiff.  The mortgage was duly recorded on May 5, 1928.  The premises consisted of five apartment buildings, each building containing three apartments.  On December 15, 1928, the owner of the equity of redemption executed a conditional sale contract for the purchase and installation of a refrigerating system in one of the buildings, and on later dates similar contracts

for the purchase and installation of like refrigerating systems for the other buildings. On July 30, 1929, he executed a conditional sale contract for the purchase and installation of an oil heating system in each of the buildings. Apparently payments have not been made on these conditional sale contracts according to their terms and the assignees of the conditional sale vendor threaten to remove the property therein described. The refrigerating system was practically the same in each building and consisted of (1) a compressor and motor set in the cellar, not attached to the floor in any way and weighing about one hundred sixty pounds; (2) an electric control device from the motor to the wall of the cellar where it connected with the house electrical system and two pipes from the compressor through the floors of the house to the refrigerating boxes and unit in the boxes; these pipes were not over three quarters of an inch in diameter on the outside; to install these pipes it was necessary to bore holes through the floor and a board was placed in front of the pipes in each room above so they did not show; (3) refrigerating boxes of a standard make weighing about three hundred pounds, of approximately the size of an ordinary ice refrigerator used before the installation was made; in installing these boxes it was necessary to cut into shelving; this refrigeration system consisted of standard apparatus not especially made for these buildings, the pipes had to be cut to fit the distances, and the whole apparatus could be removed from the premises in a short time without any substantial damage or injury to the buildings.

The trial judge found and ruled "as a mixed question of law and fact that the refrigerating apparatus, including the compressor, motor attachments, piping, and boxes, with their mechanical equipment, never became a part of the subject matter of the mortgage given to the petitioner; that as between the mortgagee and the owner of the equity the property belonged to the owner of the equity of redemption free from the provisions of the mortgage."

It is plain under the decision of *Commercial Credit Co. v. Gould, ante,* 48, that this refrigeration plant was personal

property and did not become subject to the lien of the mortgage held by the plaintiff upon the real estate. That decision by its express terms covers all matters here involved except the pipes running from the compressor to the refrigerating boxes. In the peculiar circumstances here disclosed we are of opinion that the pipes fall within the general principle declared in that case touching the compressor and the refrigeration boxes. The pipes were an essential and integral part of the installation of the refrigerating system; they do not appear to have been incorporated into and become a part of the real estate; and they partake of the nature of the compressor with its motor and the refrigerating boxes. The bare fact that these pipes pass through holes bored in the floors without other attachment to the buildings in conjunction with all the other facts is not enough to require a ruling as matter of law that they had become a part of the real estate. The facts in *Cohen* v. *General Motors Acceptance Corp.* 51 R. I. 153, distinguish it from the case at bar. The result follows that as between the mortgagee and the owner of the equity the refrigeration system in each building belonged to its owner and the plaintiff as mortgagee has not title in it in the conditions found here to exist.

The facts respecting the oil heating system are that it consisted of (1) three one-thousand-gallon metal tanks set under ground and each used to supply two heaters; (2) piping running under ground from these tanks to the buildings and then under the concrete floor of the cellar to a point near the heating mechanism in each building; to remove the piping it would be necessary to dig a trench from the tanks to the cellar and break up the concrete floor; (3) six oil heating mechanisms; one of these was placed on the floor of the cellar near the boiler of each building and was not of great weight; the discharge pipe was put through an opening in the boiler door; this opening was made by taking out a round opening made in the door when it was manufactured for the purpose of acting as a damper or regulator; the oil heating mechanism in each building was removed by a person in charge of the building before the bringing of this bill in

equity, and the boiler changed back for the use of coal for heating purposes; (4) an indirect water heating system attached to each boiler by pipes.

Some time after the temporary injunction had been issued, a letter was written intended for and finally reaching the trustee in bankruptcy of the conditional sale vendor of the oil heating system or his counsel demanding that "the oil burning equipment now installed at" the premises in question "be removed. Unless this is done at once the mortgagee will be obliged to take steps to have the equipment removed herself, and will store the equipment at your risk." The trial judge found and ruled that in all the circumstances found to exist and in view of this letter the oil heating mechanism could be recovered by the defendant claimants, and that the tanks, piping and indirect heating system had become part of the real estate covered by the mortgage and passed under the mortgage. In view of these findings it is plain that the ruling was right. *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519. *Abeloff* v. *Peacard,* 272 Mass. 56. *Waverley Co-operative Bank* v. *Haner,* 273 Mass. 477. *Greene* v. *Lampert,* 274 Mass. 386. It is unnecessary to discuss G. L. c. 184, § 13.

*Decree affirmed with costs.*