Common Pleas Court of Hamilton County.

FRIGIDAIRE SALES CORPORATION V. LOUIS H. KATZ.*

Decided December 8, 1931.

*Hightower & O'Brien,* for plaintiff.

*Phineas S. Phillips* and *Frank E. Burnett,* for defendant.

MATTHEWS, J.

This is an action in replevin in which the parties have waived a jury, and the case is now before the court for decision upon a stipulation of counsel as to certain facts, and upon the evidence introduced at the trial, and the law applicable thereto.

*Affirmed by the Court of Appeals, June 20, 1932.

The plaintiff sold certain Frigidaire cabinets, coils, and compressors to Augustus M. Sosa under a contract containing a chattel mortgage feature, in which it was provided that the mortgagee, who is the plaintiff, was to install the equipment, which was a refrigeration system, in such a way that the conduits or tubing should become a part of the building, and that the title thereto should pass to the purchaser, but that the other articles sold, to-wit, the cabinets, coils and compressors should remain personal property and should be connected with any pipes, tubing or conduit built into the building only by a coupling which screws on and off, and should not be attached to or built into any part of the building or to any framework in such manner as to interfere with ready inspection service, repair, removal, replacement or removal without injury to the premises, and the chattel mortgage purports to give the plaintiff a lien upon said chattels with the right to enter and remove the same upon default, which default had taken place prior to the institution of this action. The chattel mortgage was duly filed in the recorder's office.

At the time this property was sold to Sosa, he was the lessee of certain real estate upon which there was an apartment building, known as The LaFontaine Apartments, and this refrigeration system was installed in said apartment building. The cabinets were placed in the various apartments, and the compressors were located in the basement. The compressors were connected with the boxes by two pipes, one-quarter and one-half inch in diameter, running up through the floors, and in the rooms on the outside of the walls of the building with branch pipes at the several floors to the refrigerators or boxes located in the apartments. The compressors and boxes are attached to the pipes by means of a coupling, and the compressors rest upon the floor of the basement without being attached at all; so that the compressors and the boxes can be removed without any damage to the building. There is no claim made to the tubing.

The lease under which Sosa had possession of the LaFontaine Apartments provided for a term of ten years with the right to renew for an additional five years, and contained a privilege of purchase under terms requiring

him to pay two hundred and fifty ($250.00) dollars per month upon the privilege of purchase. The lease bound him not to commit waste, and at the end of said term to deliver up the premises in as good order and condition as they were at the time of the signing of the lease, reasonable use and ordinary wear and tear excepted. There was also an unfiled supplemental agreement between the lessor and the lessee providing that the lease would make no alterations or additions in or to said premises, or in any way remodel the improvements thereon or thereof, or remove or destroy any improvements then existing on said premises without the written consent of the lessor.

The court will make no further mention of the supplemental agreement for the reason that it is substantially a statement of what the law would be in the absence of such an agreement and certainly did not prevent the lessee from repairing or replacing existing epuipment necessary to the enjoyment of the premises for the purpose for which they were leased; and the evidence clearly shows that the new system is superior to the old and one that was clearly adapted to the uses of the building. The lessee repairing the building or completing it according to original design did not commit waste or otherwise violate the rights of the lessor.

The defendant Louis B. Katz is the lessor, and the defendant Esther Stern is the receiver appointed in an action filed in this court by Louis H. Katz to forfeit the lease, which motion is still pending, no final decree having been as yet entered. The lessee is not a party to this action.

At the time the lease was executed there was a refrigeration system consisting of separate units installed in each apartment in refrigerator rooms located one above another in such a way that they could all be connected by tubing with a central plant in the basement. The evidence shows that the building was designed in that way so that a central system could be installed eventually. The old system proved to be imperfect and inadequate and it was because of that condition and to prevent tenants moving out that the lessee purchased the refrigeration system from the plaintiff. The lessor knew, or course, that a refrigeration system was necessary in the proper op-

eration of the leased premises, and also knew before this refrigeration system was purchased that the original system was not giving satisfaction. Whether he knew in advance of sufficient facts to constitute knowledge that it was the purpose of the lessee to replace the defective system by a new system, the court finds it is not necessary to decide. He certainly knew something had to be done.

Prior to the installation of the new system, and prior to the execution of the lease to Sosa the owner had placed a real estate mortgage upon the premises, and that mortgage remains unsatisfied in part at least.

The question presented by this state of the evidence is whether or not the plaintiff, basing its right upon a chattel mortgage upon those articles, has shown a right to the immediate possession thereof. A determination of that issue necessitates a consideration of the relative rights of a mortgagee of personal property that has been in some way connected with real estate under a contract with a lessee, and as against a lessor of said real estate, and the holder of a prior mortgage thereon.

The Ohio law on the subject of fixtures has been so recently summarized in 19 Ohio Jurisprudence that the court has been saved the labor of investigating the cases. At page 90 of that volume it is said:

"The intention of the person making the annexation has been said by some authorities to be the controlling consideration, and is generally held to be the chief test. It is not always determinative, but has a controlling influence in cases of doubt."

And upon the effect of an agreement, the author, at page 92, says:

"There is no doubt, that where an article belonging to one person is attached to the realty of another person, the status of such article as either a fixture or a chattel may be controlled by special agreement of the parties, * * *"

and at page 93:

"Machinery other than motive power machinery may be affected by the agreement of the parties, and its character as personalty preserved, even as against third parties."

So in this case we assume there can be no question but what the provisions of the chattel mortgage were effective to preserve for these articles their status as personal property as between the chattel mortgagee and the lessee to whom they were sold.

As between a prior mortgagee and the chattel mortgagee, the authorities are in conflict as to their respective rights. At page 99 of the same author, it is said:

"The preponderance of authority is to the effect that, where the removal of the fixture will not materially injure the premises, a seller thereof, retaining title thereto, may assert his right as against a prior mortgagee of the realty."

In an annotation to *Abramson* v. *Penn & Co.*, 73 A. L. R. (Md.) 742, at 755, the annotator says:

"The subsequent decisions are in accord with the general rule supported by the weight of authority as stated in the annotation in 13 A. L. R. 461, that where the removal of the fixture will not materially injure the premises, a seller thereof, retaining title thereto, may assert his right as against a prior mortgagee of the realty."

Many authorities are cited in support of the rule stated.

It is claimed that the fact that this refrigeration system replaced an old one that the tenant had no right to remove, prevented him from making this agreement, affecting the status of the new refrigeration system as property.

It is manifest from the evidence that the old system was inadequate and useless for the purpose. If it had remained in the building it would not have enhanced the value of the building, but, on the contrary, would have depreciated its value by causing the tenants to vacate. Something had to be done about the refrigeration system. A central refrigeration system was undoubtedly superior, and provided for in the construction of the building, and the evidence shows that its installation cost no more than would have been expended in an effort to make the old system adequate. The tubing to which the new system was connected had become an integral part of the building which is covered by the mortgage, and is and will be a part of a system which was contemplated would

be installed when the building was designed, and in addition to that, the mortgagee has had the advantage of having its security preserved for more than a year through the operation of the new refrigeration system.

The decisions upon the question of effect of the circumstance that the new machinery replaced the old, are collected in the annotation to the case of *Beatrice Creamery Co.* v. *Sylvester,* 13 A. L. R., 441 at 468, 469 and 470. The weight of authority is that that fact does not deprive the chattel mortgagee of his rights under his mortgage. Upon the same subject see *The Murray Co.,* v. *Simmons,* 229 S. W. 461, reversing the same case reported in 205 S. W. 517. *Workingmen's Building & Loan Association* v. *Smith,* 155 Atl., 20.

So we have reached the conclusion that the fact that there is a prior mortgage upon the real estate, and that this new refrigeration system was installed to take the place of an old system that was inadequate and useless, does not deprive the plaintiff of its rights under its mortgage.

There is likewise a conflict in the authorities as to the relative rights of the lessor, and chattel mortgagee of the lessee. Upon this subject it is said in 19 Ohio Jurisprudence at page 108, that:

"In regard to the respective rights of the landlord and a chattel mortgagee of personalty placed by the tenant on the realty of the landlord, there is very little authority. There seems to be no doubt that where a tenant executes a chattel mortgage on trade fixtures, the rights of the chattel mortgagee are superior to those of the landlord, and it would seem to follow that if the mortgaged article could be regarded as personalty, or could be detached from the realty without damage thereto, the right of the chattel mortgagee would be superior to that of the landlord; but where the article, from the nature and method of annexation, would be regarded as a fixture, or where its removal would cause damage to the realty, the landlord's right would be superior to that of the chattel mortgagee."

The cases, however, in other jurisdictions on the subject are conflicting. They are collected in an annotation to *Gerlach Co.* v. *Noyes,* 45 A. L. R. 961 at 967.

It seems to the court, the weight of the authorities is

that, where the article can be removed without substantial injury to the freehold, the chattel mortgagee's rights are superior to those of the lessor.

Counsel have discussed at considerable length two recent decisions by the Supreme Judicial Court of Massachusetts, to wit: *The Commercial Credit Corporation* v. *Gould,* 175 N. E., 264; and *The Commercial Credit Corporation* v. *Commonwealth Mortgage & Loan Company,* 177 N. E. 88. In the first case the court held in favor of the chattel mortgagee, and in the second case in favor of the real estate mortgagee. In each case the trial court made findings of fact, and it so happened that the findings were diametrically opposed upon the issue of the intention of the vendee in affixing the article to the realty. The different conclusions reached in the two cases were based solely upon that fact as shown by the language of the court in the later decision at page 90, to-wit:

*"Commercial Credit Corp.* v. *Gould, supra.,* is not in conflict. There the judge found that the vendor and vendee did not intend that the equipment should become a part of the realty. It was held that because of this finding the conclusion was required that the equipment was personal property. In the case at bar the equipment was designed and installed for the very purpose of making a permanent addition to the building. Because of these findings the present case is also to be distinguished from *Morrison* v. *Segal* (Mass. 169 N. E. 789; *Medford Trust Co.,* v. *Priggen Steel Garage Co., supra;* and *Stiebel* v. *Beaudette & Graham Co.,* (Mass.) 175 N. E. 267, where there were findings of fact that the articles were personal property.

"* * * The difference between those cases and the case at bar consists in diverse inference drawn by the trial judges in those cases as to the intent of the parties in installing the refrigerating system and the ultimate purpose to be accomplished by such installation and the design in making whatever attachment was made to the real estate, as compared with the inference drawn by the trial judge in the case at bar touching those matters. The drawing of permissible inferences in an action at law is a question of fact; it is a function of the fact finding tribunal and not of this court on review of questions of law."

It is the duty of the court, in this case, to draw the inference from the evidence adduced, and the court finds

that there is nothing in the evidence to contradict the intention of the parties as shown by the terms of the chattel mortgage, and that on the contrary, the method of attachment in pursuance to the terms of the chattel mortgage shows that the intent to preserve the status of the repairs as personal property was preserved from the beginning to the end of the transaction, and that no detriment will result to either the realty mortgagee or the lessor by giving effect to the contract between the chattel mortgagee and the lessee.

The court, therefore, finds on the issues joined, in favor of the plaintiff.

The issue as to the damage for retention of the property is postponed for future consideration.