WALKER DISHWASHER CORPORATION *vs.* MEDFORD TRUST COMPANY.

Middlesex.    March 14, 1932. — March 30, 1932.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Real or Personal Property. Mortgage,* Of real estate, Of personal property.

In a suit in equity seeking delivery of several dishwasher sinks located in an apartment house, it appeared that the plaintiff had sold the sinks to the owner of the building and had received from him a chattel mortgage under which there had been default and that the defendant held a prior mortgage upon the building which he had foreclosed; and there was evidence that the sinks hung from brackets which were screwed into the wall and that they could be removed, without damage to the building, by unscrewing the tail-pieces, the drain pipes and the faucets, lifting off the sinks and replacing the faucets. *Held,* that the evidence warranted, although it did not require, a finding by the trial judge that the sinks remained personal property; and that a decree in the plaintiff's favor was proper.

BILL IN EQUITY, filed in the Superior Court on July 2, 1931, and afterwards amended, described in the opinion.

The suit was heard by *Gray,* J., a stenographer having been appointed under G. L. c. 214, § 24; Equity Rule 29 (1926). Material evidence, findings by the judge and a final decree entered by his order are described in the opinion. The defendant appealed.

*D. E. Sullivan,* for the defendant, submitted a brief.

*B. Potter,* for the plaintiff.

CROSBY, J. This is a bill in equity by which the plaintiff seeks to have the defendant ordered to deliver to it thirty-two Walker dishwasher sinks, installed in an apartment house now owned by the defendant. The sinks were sold by the plaintiff on or about September 23, 1929, to one Griffin who then owned the premises, now owned by the defendant, and was at that time engaged in building thereon the apartment house in which the sinks were later installed. Before September 23, 1929, Griffin had executed to the defendant first and second mortgages of the real estate, which were duly recorded. On September 23, 1929, he executed to the plaintiff a chattel mortgage covering the thirty-two sinks to secure the payment of twelve promissory notes totalling $2,990; this mortgage was duly recorded. At the date of the filing of the bill eleven of the notes, amounting to about $2,750, were overdue. Thereafter the defendant took title to the apartment house property by foreclosure of its second mortgage. The case was heard by a judge of the Superior Court. He states that, "Having due regard to the nature and purpose of the articles in dispute, to the manner in which they were attached to the real estate and the intention of the parties, the court finds that the articles remained personal property and finds and rules that the plaintiff is entitled to possession of them under its personal property mortgage of the condition of which there has been a breach." A final decree was entered ordering the defendant to permit the plaintiff to enter the apartments and remove the sinks.

A description of the sinks and of the manner of their installation as appears by the undisputed evidence is, in substance, as follows: The sink hangs on the wall suspended from brackets which are screwed into the wall. The plaintiff does not furnish the faucets or the trap. In order to remove the sink "Just unscrew the tail-piece . . . and lift your sink right off the wall . . ." it would not be necessary to detach your waste. It would be necessary to detach the faucets, and you could put them back. It would not be necessary to detach the waste line, because that is a permanent proposition. The dishwasher sink hangs on these lugs, and you can

lift the sink off . . . ."  In removing the sink no damage would be caused to the building.  The sink takes the place of an ordinary sink, it is the dishwasher and sink combined. In order to remove the sink it would be necessary to unscrew the drain pipe.  The hot and cold water pipes go through two holes in the casting and to remove the sink "you just unscrew your faucets, and put them back."

The finding of the trial judge that the sinks remained personal property must stand unless in the opinion of this court it is plainly wrong.  *Donnelly* v. *Alden*, 229 Mass. 109, 114.  *Freeman* v. *Davenport Peters Co.* 272 Mass. 321, 323. In determining the question of fact whether or not the sinks were personal property, the judge could properly consider the way in which they were attached to the building, the intention of the parties, and the nature and purpose of the articles.  All that was required to remove the sinks would be to unscrew the "tail-piece" and faucets and lift the sink from the lugs which were attached to the brackets.  It thus appears it could be found from the physical facts that as installed the articles easily could be removed from the apartments without any damage whatever to the building.  It also could be found from the giving by the purchaser to the plaintiff of a chattel mortgage covering the thirty-two sinks that the parties intended that they were to be regarded as personal property.  The nature and purpose of the articles and the manner in which they were attached to the walls were evidence from which it could reasonably be inferred that they were to remain personal property.  *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519.  *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349.  Generally it is a mixed question of law and fact whether articles of personal property can be removed from a building and used elsewhere or have become so attached to the building as to be a part of the real estate.  It could not properly have been ruled as matter of law that these sinks had lost their identity as personal property, and had become a part of the real estate, nor could it have been ruled that they were personal property. The finding that they remained personal property was warranted upon the evidence.  The case is governed in principle

by what was said in *Automatic Sprinkler Corp. of America* v. *Rosen,* 259 Mass. 319, *Morrison* v. *Segal,* 270 Mass. 292, *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349, *Commercial Credit Corp.* v. *Gould,* 275 Mass. 48, and is plainly distinguishable from *Commercial Credit Corp.* v. *Commonwealth Mortgage & Loan Co. Inc.* 276 Mass. 335.

It is the contention of the commissioner of banks who is now in possession of the defendant that the case is governed by what was decided in *Bainway* v. *Cobb,* 99 Mass. 457. That was an action for the conversion of a stone sink in a dwelling house. The sink, which weighed about two hundred fifty pounds, had been placed in the house by the owner twenty-five or thirty years previously, "in the corner of a room, over a cistern." It "rested upon a wooden frame next the sides of the room, without being nailed or fastened to the house, except that a lead pipe ran from a hole at one end under the sink through the side of the house into a stone drain constructed for the purpose of carrying off the waste water"; a wooden pump was put into the cistern with the outlet leading out into the sink. As the pump did not work well it was soon removed and water was drawn from the cistern in a bucket. The lead pipe remained until it was worn out and was taken away; a stopple was then used in the sink and the waste water drawn or dipped out. The sink remained in the same place, and was used for washing dishes, and in doing other work until the owner died in 1862, when the defendant, who was his only son and sole administrator, and his other children and heirs at law met and agreed upon a division of his property among themselves, by which the household furniture was given to one of his daughters, and his real estate and other personal property were conveyed to the defendant. After the division, but before the conveyance to the defendant, the plaintiff bought the sink from that daughter and removed it from the premises; the defendant demanded and took the sink and returned it to its old place, claiming it as a part of the real estate. This court held that it was annexed to and became a part of the freehold of the owner, as shown by its weight and by the

purpose and the mode of placing it on the premises; that the removal of the pump and pipe without otherwise changing the position or the use of the sink did not sever it from the freehold or make it personal property again; and that if it had been annexed by a tenant for years he might have disannexed and removed it during his term, but not afterwards. It further held that the law is more favorable to an heir as against an executor, both claiming under the same owner of the estate, than to the landlord against his tenant who has paid for the occupation of the premises and himself put in the fixtures in question.

*Bainway* v. *Cobb*, above referred to, has been cited but once in the decisions of this court, and then in *Smith Paper Co.* v. *Servin*, 130 Mass. 511, where it was held that an iron table, used in the manufacture of plate glass, weighing thirty-three tons, resting on brick foundations and adapted for use only in such factory, became a part of the realty, although it could be removed without injury to the foundations upon which it rested or to itself. In that case it was said that it must be presumed that the owner in placing the table there intended it to be a permanent fixture to be used in the factory. In *Bainway* v. *Cobb*, 99 Mass. 457, there was nothing to show that the stone sink was intended by the owner to be used in any place other than in his dwelling house and in view of the mode of its installation, its weight, and the purpose for which it was used, it became a part of the freehold. That case is plainly distinguishable from the case at bar.

Upon the reported testimony there was no error in the findings of the trial judge. The findings and order for decree, and the final decree must be affirmed with costs.

*Ordered accordingly.*