CUMBERLAND COUNTY POWER AND LIGHT COMPANY

*vs.*

HOTEL AMBASSADOR.

Cumberland.    Opinion, February 5, 1936.

154

*Verrill, Hale, Booth & Ives*, for plaintiff.
*Harry S. Judelshon*, for defendant.

Sitting: Dunn, C. J., Sturgis, Barnes, Thaxter, Hudson, Manser, JJ.

Sturgis, J.   Action of replevin to recover one General Electric refrigerator. The plea was the general issue with brief statement that the chattel had been annexed to and become a part of an apartment house which the defendant owned. The case is reported on an agreed statement of facts.

On or about January 1, 1925, Ambassador Apts. Inc., a corporation, constructed an apartment house at 37 Casco Street in Portland. The property was originally encumbered by a first mortgage to the Union Trust Company, Trustee, which was dated January 1, 1925, and originally written for the sum of one hundred thirty-five thousand ($135,000) dollars. On June 10, 1927, one Philip Blumenthal was given a second mortgage for thirty-seven thousand ($37,000) dollars on the same property. Both these mortgages were duly recorded in the Registry of Deeds.

On August 10, 1931, the Cumberland County Power and Light Company, the plaintiff in this action, by a conditional sales contract of that date and recorded on December 21, 1931, following, sold the Ambassador Apts. Inc. eighty-seven S-42 General Electric all steel Monitor-top refrigerators, the price to be paid therefor being $13,267.50, payable $221.12 on the signing of the agreement, and a like sum on the tenth day of each month thereafter until the purchase price was fully paid. The contract provided that "title to all of which articles shall remain in the seller until full payment of the aforesaid sum, and shall then vest in the buyer," and "In case of sale of the premises by the buyer, the buyer agrees to include as a term of said sale, the assumption by the purchaser of said premises of this contract." The conditional sales vendor was also given the right on default in payment of any installment when due, or other breach of the agreement, to enter and repossess said property without legal process and retain all moneys already paid thereon without responsibility for damage to the property of the vendee or obligation to restore the premises from which the removal was made to their original condition.

It is stated that the apartment house contained eighty-seven

apartments, seventy being family household or so-called permanent apartments, and seventeen used for transient guests. The household apartments originally had been furnished with ordinary ice chests, but those let to transients were not refrigerated. Between September 14, 1931, and January 5, 1932, seventy refrigerators, each a unit complete in itself, resting on the floor of its own weight and in no way physically attached to the building except by the insertion of a plug connected to the refrigerator into a base socket in the wall, were delivered to Ambassador Apts. Inc., and placed in the seventy household apartments. The owner of the building removed the ice chests from the household apartments and plugged the drains provided for them. The plaintiff company had put in base plug outlets in all of the apartments, both household and transient, which were available for a refrigerator connection. In the first instance, it was left optional with the tenants of the household apartments as to whether they would use electric refrigerators at an additional rent charge or continue to use an ice chest. Eventually, by reletting, all of such apartments were rented furnished with one of the electric refrigerators. It is also stated that "from time to time, refrigerators were moved from one apartment to another."

On June 21, 1934, Philip Blumenthal, having foreclosed his second mortgage and taken possession of the apartment house, including the refrigerators in the apartments, sold his interest in the property to Hotel Ambassador, a new corporation organized under the laws of the State of Maine and the defendant in this action. Shortly thereafter, the plaintiff company demanded possession of the seventy refrigerators which it had delivered to Ambassador Apts. Inc. under the conditional sales contract, and the demand being refused, seized one of the refrigerators under the writ of replevin in this action, which is prosecuted as a test case. It is agreed that the vendee in the conditional sales contract under consideration was in default in its installment payments for the refrigerators when this action was begun. It does not appear that its successors in title have made any payments or assumed responsibility therefor.

The only issue raised by the plea is that of title. *Cate* v. *Merrill*, 109 Me., 424, 84 A., 897 ; *McLeod* v. *Johnson*, 96 Me., 271, 52 A., 760. The question presented is whether the refrigerator has become

a part of the realty. If the chattel is a fixture, its ownership is governed by the settled rule in this State that an agreement between a mortgagor and a conditional sales vendor preserving the chattel character of property added to the mortgaged real estate as a fixture during the life of the mortgage is ineffective as against the mortgagee unless he is a party to the transaction, title to the fixture vesting in the mortgagee as against the mortgagor and his vendor. *Gaunt* v. *Allen Lane Company*, 128 Me., 41, 45 A., 255; *Vorsec* v. *Gilkey*, 132 Me., 311, 170 A., 722. The rule necessarily extends to persons acquiring title to the premises from the mortgagee after the chattel has become a part of the realty. It does not appear in the agreed statement filed in this case that the mortgagee, from whom the Hotel Ambassador purchased the refrigerator in suit, consented to or was a party to the conditional sales transaction by which it was sold.

The inviolability of the old test of the physical character of the annexation is now generally denied and it is held that a chattel is not merged in the realty, unless (1) "it is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof, (2) it is adapted to and usable with that part of the realty to which it is annexed, and (3) it was so annexed with the intention, on the part of the person making the annexation, to make it a permanent accession to the realty." *Hayford* v. *Wentworth*, 97 Me., 347, 54 A., 940; *Young* v. *Hatch*, 99 Me., 465, 59 A., 950; *Roderick* v. *Sanborn*, 106 Me., 159, 76 A., 263; *Squire & Co.* v. *Portland*, 106 Me., 234, 76 A., 679. And, in applying these tests, "the intention with which an article is annexed to the freehold has come to be recognized as the cardinal rule and most important criterion by which to determine its character as a fixture." *Portland* v. *N. E. T. & T. Co.*, 103 Me., 240, 68 A., 1040; *Roderick* v. *Sanborn*, supra.

In order to meet the first of the conditions enumerated, it is not necessary that the chattel be physically fastened to the realty at all times. The annexation may be constructive or actual. If the owner's intention to make the chattel a part of the realty is duly manifested, "the article is dedicated to the realty and its status as personalty has ceased." This is deemed to be constructive annexation. *Farrar, et al.* v. *Stackpole*, 6 Me., 154; *Roderick* v. *Sanborn*,

supra. It may be here found that there was at least constructive annexation. So, too, with the question of the utility of the refrigerators. They were undoubtedly adapted to and usable in and with the household apartments in which they were installed. They were used there for a long time and, so far as it here appears, proved satisfactory and sufficient for the purposes for which they were designed.

As to the intention, the all-important element to be established in order to prove that a chattel has been merged into a fixture, it is well settled that it is not the secret intention that controls, but that indicated by the proven facts and circumstances, including the relations and conduct of the parties. The "controlling intention is not the initial intention at the time of procuring the article in question, nor the secret intention with which it is affixed, but the intention which the law deduces from all the circumstances of the annexation." *Portland* v. *N. E. T. & T. Co.*, supra; *Roderick* v. *Sanborn*, supra. It is "the intention that should be inferred from all these. . . . Whether there was such an intention is a question of fact, or at least of mixed law and fact, for the jury in an action at law where there is any conflict of evidence or more than one possible logical inference from undisputed facts." *Hayford* v. *Wentworth*, supra.

On the question of intention, it is significant, as was noted in *Hayford* v. *Wentworth*, supra, that the refrigerators were "not annexed in the construction, enlargement or repairs" of the building or any of the apartments in it. They were "not designed or made for this particular (building) or place, nor for any particular place." Each "was a chattel already made for the general market, and kept in stock and separately by itself an object of sale and purchase in the general market. It could be placed and used in any room, or building, and transferred from building to building and from place to place in the same building. It had a market value before annexation and a market value after removal." The agreed statement of facts filed in this case shows that the refrigerators were not used exclusively in any particular apartments, but "from time to time refrigerators were moved from one apartment to another."

Weight also must be given to the fact that the purchaser of these refrigerators, before installing them in its apartment house, joined in the execution of a conditional sales contract which characterized the refrigerators as chattels and provided for a retention of title by the vendor. This evidence tends to prove that the mortgagor did not intend that the refrigerators should immediately become a part of the realty. *Hayford* v. *Wentworth,* supra; *Ames* v. *Trenton Brewing Co.,* 57 N. J. Eq., 347, 45 A., 1090; *Jennings* v. *Vahey,* 183 Mass., 47, 66 N. E., 598; *Medford Trust Co.* v. *Garage Co.,* 273 Mass., 349, 354, 174 N. E., 126. The provision for assumption of the contract by the purchaser of the building does not destroy the force of this evidence.

*Roderick* v. *Sanborn,* supra, relied upon by the defendant, rests upon entirely different facts. There, the plaintiff procured outside windows and doors to be "made for (her) house and especially fitted to it," and the agreed statement furnished convincing evidence that the doors and windows there in controversy were "obviously adapted and intended to be used with it (the house)." The facts here are more closely analogous to those in *Hayford* v. *Wentworth,* supra, a case involving the respective rights of a landlord and a tenant in a wash-down syphon water closet and its appurtenances, but decided on principles fully applicable to transactions between mortgagor and mortgagee. The same questions have arisen in other jurisdictions under substantially similar circumstances. A consideration of some of these cases seems profitable.

In *Jennings* v. *Vahey,* supra, a vendor sold the owner of an apartment house twenty-four kitchen ranges under a conditional sales contract. The defendant claiming a right to repossess the ranges for default in payments, the mortgagee of the premises sought an injunction to restrain the repossession on the ground that the ranges had become a part of the real estate. Noting that the funnels of the ranges passed into holes in the chimneys and the hot water pipes were connected to removable hot water boilers, but the ranges could be bought at any stove store, used in any other place where there was a chimney hole for a funnel and could be removed without damage to the premises, in holding that the ranges were not fixtures, that Court said:

"The ranges seem to have been such as in most parts of the State tenants take with them from house to house when they change their residence, and set up as a part of their furniture as they carry a bureau or a table. The fact that the owner of the building placed one in each of his twenty-four apartments, gives a suggestion of permanence which furnishes some ground for an argument in behalf of the plaintiff; but the contract which he made with the defendant shows that he did not intend immediately to make them his property as a part of the real estate."

It was held that the ranges were not fixtures and title had not passed to the mortgagee.

In *Commercial Credit Corp.* v. *Gould,* 275 Mass., 48, 175 N. E., 264, subsequent to the giving of a mortgage upon an apartment building, the owner purchased on conditional sale refrigerating equipment therefor, consisting of a compressor installed in the basement connected by pipes in the walls with boxes or refrigerators located in the apartments, the latter being of ordinary stock pattern and easily removable without damage to the building, and it was held that the refrigerating equipment was property the nature of which depended upon the intention of the landowner as manifested by his acts, and that the physical facts did not compel a finding that the conditional vendee intended that the equipment should become a part of the realty. The further fact that the refrigerating equipment was "bought on conditional sale, even if unknown to the mortgagee, had some tendencies to show that the landowner did not intend it to remain permanently," and was sufficient to sustain a finding that the equipment had not become a fixture. To the same effect, see *Stiebel* v. *Beaudette & Graham Co.,* 275 Mass., 108, 175 N. E., 267. ·

In the *Walker Dishwasher Corp.* v. *Medford Trust Co.,* 279 Mass., 33, 180 N. E., 517, thirty-two dishwasher sinks were installed in the apartments of an apartment house then under mortgages to the defendant, one of which was afterwards foreclosed. The sinks were suspended from brackets screwed into the wall, drain pipes were screwed into them and the hot and cold water pipes were screwed into the faucets. The Court said:

"In determining the question of fact whether or not the sinks were personal property, the judge could properly consider the way in which they were attached to the building, the intention of the parties, and the nature and purpose of the articles. All that was required to remove the sinks would be to unscrew the 'tail-piece' and faucets and lift the sink from the lugs which were attached to the brackets. It thus appears it could be found from the physical facts that as installed the articles easily could be removed from the apartments without any damage whatever to the building. It also could be found from the giving by the purchaser to the plaintiff of a chattel mortgage covering the thirty-two sinks that the parties intended that they were to be regarded as personal property."

In *Anderson* v. *Southern Realty Co.*, 176 Ark., 752, 4 S. W., 27, kitchen cabinets, refrigerators and gas kitchen cook stoves installed in the apartments of an apartment building, were held not to be fixtures. A finding below that the gas stoves had become fixtures because they were attached to gas supply pipes by a screw was set aside.

In *Madfes* v. *Beverley Development Corp.*, 251 N. Y., 12, 166 N. E., 787, title to gas ranges installed in an apartment house was at issue between a vendor and vendee in a conditional sales contract. Argument was advanced and deemed persuasive in a dissenting opinion that gas ranges are the universal equipment of every apartment in apartment houses and should be deemed, as a matter of law, a part of the realty. This contention was not sustained in the majority opinion, it being pointed out that such an installation was not an innovation in the equipment of apartment houses and was not convincing, much less conclusive, proof of annexation.

In *Dunn* v. *Assets Realization Co.*, 141 Ore., 298, twenty-one electric ranges were purchased on a conditional sales contract and installed in an apartment house subsequently mortgaged to the plaintiff's assignor. The defendant acquired the vendee's title. Applying the tests of (1) annexation; (2) adaptation; and (3) intention, that Court found that the ranges had not been merged into the realty and become fixtures.

Reason and the clear weight of authority convince us that the defendant's claim should be denied. Neither the type of the refrigerator in suit nor the facts and circumstances attending its installation in the defendant's apartment house clearly indicates an intention to permanently annex the chattel to the building and make it a part of the realty. Lacking this element, conversion of the chattel into realty can not be predicated on the annexation and adaptation shown in this case. According to the terms of the report, judgment must be for the plaintiff with damages assessed at twenty-one ($21) dollars and with costs.

*Case remanded to Superior Court for entry of judgment, assessment of damages and allowance of costs in accordance with this opinion.*