WILLIAM THOMPSON *vs.* FRANKLIN E. VINTON.
SAME *vs.* JOHN M. VINTON & another.

Worcester. October 4. — 23, 1876. COLT & MORTON, JJ., absent.

Machinery so attached to mortgaged premises, as to become a part of the realty as between mortgagor and mortgagee, by a mortgagor and his copartner, in part as a substitute for articles then removed, to be paid for equally by them, must be treated as annexed by the mortgagor, and he cannot, by any agreement with his partner, bind the mortgagee to treat the machinery as personalty.

The possession of a mortgagee of land, who makes an entry on a certain date and records the certificate of such entry within thirty days thereafter, commences from the date of the entry, and he may maintain an action for a trespass subsequent to the entry and before the record of the certificate.

THE FIRST CASE was replevin of a part of a shaft and head gear of a water wheel.

THE SECOND CASE was tort for breaking and entering the plaintiff's close and removing a water wheel therefrom.

The two cases were tried together in the Superior Court, before *Aldrich*, J., who reported the cases for the consideration of this court, in substance as follows:

It appeared in evidence that Hiram Purdy was the owner of a tract of land with a mill and mill privilege thereon; that the premises were subject to a mortgage to one James Batcheller, to secure the payment of $600, dated October 27, 1870, which mortgage was assigned to the plaintiff by an assignment dated October 24, 1872, and recorded; and that on August 5, 1873, the plaintiff made an open and peaceable entry upon the premises to

foreclose the mortgage, for condition broken, in the presence of witnesses, a certificate of which entry was made and duly recorded on September 2, 1873.

On November 25, 1872, Purdy and Franklin E. Vinton entered into copartnership under articles of agreement, the material parts of which were as follows:

"First. The style of said copartnership shall be Vinton & Purdy, and shall continue for the term of five years from the above date, except in case of death of either of the parties within said term.

"Second. The said Vinton and Purdy are the proprietors of the stock as follows: The said Purdy is to furnish all his machinery now in his mill at Saundersdale in said Southbridge — and the said Vinton is to furnish one bobbin lathe and all necessary machinery to run the same in first class order. All which is to be entered up in their stock book, and to remain the property of each partner, and the said partners are to continue to own said stock as above, and all stock that is manufactured to be owned by said partners in equal proportions. And in case of any addition being made to the same by mutual consent, the said partners shall pay for the same equally, and own the same in equal portions.

"Third. All profits which may accrue to said partnership shall be divided, and all losses happening to said firm, whether from bad debts, depreciation of goods, or any other cause or accident, and all expenses of business shall be borne by said parties in the aforesaid proportions of their interest in said stock.

"Ninth. At the expiration of the aforesaid term, or earlier dissolution of the copartnership, the said parties or their legal representatives shall own the machinery that they at present own, and the manufactured stock shall be divided equally.

"Eleventh. This business is to be conducted in the mill of said Purdy at Saundersdale, and said Purdy is to furnish said mill and the power to run the same free from all rent for one year from this date. All necessary repairs to be made by said firm, and at the expiration of one year, if said parties cannot agree as to the amount of rent to be paid per year for the use of said mill and power, it shall be referred to three men to say what the rent is worth, and said parties shall pay said rent in equal

proportions for the remaining time they shall occupy said mill."

. After the formation of the copartnership they, in contemplation of the proposed manufacture, agreed that they would take out the wheel which was in the mill, it being worn out and of little value, and would put in a new wheel and shaft, and they thereupon procured the wheel and shaft in controversy, and gave their note signed by each partner individually in payment therefor. The wheel was set during the continuance of the copartnership, and both partners worked in setting it. It was put in in January and February, and was connected with the machinery by April 1, 1873. Some of the bobbin machinery was then in the mill and was connected. While the copartnership continued, it was agreed between the partners that the wheel and shaft should be paid for by Vinton, and then he should own and hold them upon the same terms and conditions that he owned and held the other property mentioned in the copartnership agreement as belonging to Vinton. No manufacturing was ever done by the partners under the copartnership agreement, and on April 7, 1873, they dissolved the copartnership, and Purdy made a lease of the premises to Vinton, by an instrument containing the usual covenants and the following clauses :

" A certain frame building with the sheds thereto joined and connected, and all the water power thereto connected for furnishing power to run any machinery now in said building, or that may be placed in said building.

" The lessor also leases to said lessee the right to put in a new water wheel, and to use from the machinery now in the mill his long edging table, &c., giving the lessee the right to use the present shafting, belts, gates, cut-offs, and other fixtures necessary to affix his machinery to said building and run the same. And it is hereby agreed with said lessor and said lessee, that at the end of this lease said lessee shall have the right and privilege of removing any and all machinery, fixtures or other articles by said lessee attached to said building for the purpose of carrying on said business, said removal not to injure said building, and the lessee agrees with the lessor that at the end of the term of this lease if said lessor desires to purchase said water wheel put in said building by said lessee, that if they cannot agree on price

to be paid for the same they will leave it to three men to say what said wheel is worth to said lessor, and the said lessee hereby agrees to sell said wheel to said lessor for the amount they shall say, and said lessor agrees to take and pay for said wheel at that price.   To have and to hold for term of one year from the 7th day of April, A. D. 1873.

"And the lessor and lessee agree that if at the end of said term said lessor wishes to purchase any of the shafting or fixtures placed in said mill by said lessee, he may do the same, and the lessee agrees to sell the same to said lessor."

Vinton paid for the wheel and shaft.   At the time the entry was made upon the premises to foreclose the mortgage the mill was closed and Vinton had no knowledge of it.   The plaintiff, after his entry to foreclose, did not go into actual occupation of the premises, and did not disturb the mortgagor or Vinton in their occupation, up to the time of the acts complained of.

On August 25, 1873, Franklin E. Vinton, assisted by the other defendant, removed the wheel and shaft from the mill, claiming a right to do so, and these were the acts complained of.   The annexation of the wheel and shaft to the mill was of such a character as to make it a fixture as between mortgagor and mortgagee, however it might have been between landlord and tenant.

In the second case the damages were agreed to be $400.   The presiding judge ruled, against the objection of the defendants, that on these facts the plaintiff was entitled to recover in both actions, and, the parties consenting, ordered verdicts accordingly, which were to stand, or be set aside and judgment entered for the defendants, as this court should order.

*A. J. Bartholomew & W. S. B. Hopkins*, for the plaintiff.

*G. F. Verry & F. A. Gaskill*, for the defendants.

Devens, J.   When the new wheel, shaft and head gear were put into the mill, although they were to be paid for by F. E. Vinton and Purdy, who were then copartners, they must be considered as annexed by the mortgagor, Purdy.   He was in actual occupation of the premises, and the only title which Vinton had therein was by virtue of his copartnership with him.   This annexation was of such a character as to make these articles, as between mortgagor and mortgagee, a part of the freehold, and they were in great part a substitution for articles then removed.

It was not in the power of the mortgagor, by any agreement made at that time, or subsequently when he leased the property to Vinton, to bind the mortgagee to treat them as personalty. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279, 283.

The subsequent lease of the premises to Vinton by Purdy did not make him the lessee of the plaintiff, nor did Purdy's agreement enable Vinton to remove these articles as those which a tenant might properly remove during his tenancy.

If, in order that he should maintain these actions for the value of the property removed, it was necessary that the plaintiff should have been in possession when it was thus removed, he was so by his entry on August 5, 1873. Having recorded the certificate of such entry within thirty days, his possession commenced upon the date of the entry, and it was on August 25, 1873, that the alleged trespass was committed.

We have not thought it necessary to consider whether these two actions are brought for one and the same tort, and therefore whether both can be maintained. That question was not presented to us by counsel, nor apparently passed upon in the court below, and must be deemed to have been waived.

*Judgments on the verdicts.*