SOUTHBRIDGE SAVINGS BANK *vs.* STEVENS TOOL COMPANY.

Worcester.   Oct. 7, 1880. — April 5, 1881.   COLT, MORTON & FIELD, JJ., absent.

The owner of a machine, intending to hire a certain shop in the future, authorized the owner of the shop to remove the machine thereto and set it up ready for use, under an agreement by which it was to be stored free from charge until the owner of the machine used it, when rent for a portion of the shop was to be paid. The machine, which weighed about a ton, was placed in the shop under this agreement, and was fastened to the flooring by screws, and braced to the beams of the floor above. It could be removed, but with some injury to the floor. It was adapted and designed for use in a machine-shop. While the machine was thus in the shop, and before it was used by its owner, the owner of the land mortgaged the land and building to a person who saw the machine in the shop, and was ignorant of the agreement between the owner of it and the owner of the shop. *Held,* that the machine passed by the mortgage as part of the realty.

BILL IN EQUITY to restrain the defendant from removing a drill from a machine-shop in Brookfield. At the hearing before *Ames,* J., the following facts appeared:

Prior to July 1, 1877, William X. Stevens was the owner of a tract of land in Brookfield on which he had erected a brick shop one hundred feet in length and forty-two feet in width, fitted with boiler, engine and shafting, and adapted and designed for a machine-shop or other manufacturing purposes. Stevens was a stockholder and president of the defendant corporation. Prior to July 23, 1877, the corporation had purchased machinery, including said drill, to use in the manufacture of a patented machine, had set it up elsewhere for a time, and, not being ready to go on with their manufacturing, stored the machinery in a freight-house. On July 23 the directors of the corporation, in anticipation of hiring the shop, passed the following vote:

" Voted: To have the machinery and other property of the com pany moved to new shop of W. X. Stevens, and set up ready for use, and he is authorized to do the same. He agrees to store it for the company free of charge, until the company receives an order requiring the use of the tools, or until the company uses the tools in his shop; but from that time he is to receive rent at the rate of $200 a year for one third of the lower story of his building until otherwise agreed. For moving and setting up the tools he is to charge the company the cost of doing it." Pursuant to said vote, Stevens forthwith moved the machinery to his shop and set it up ready for use, and was paid for so doing by the corporation.

The drill in question was made of iron, with a base two and a half feet by about twenty inches square and two inches thick of cast iron. A groove ran round the edge of the base and through the base were four or six holes one half an inch in diameter, countersunk for screws; from the base and part of the same casting rose the standard, and on this at the proper height was the plate on which the work was placed, and above that a crane or arm in which the drill operated. The machine was operated by gears and pulleys and was belted upward from a pulley on the machine to a pulley on the main shafting. It was from six to eight feet high and its weight was about one ton. It was fastened to the plank flooring by four or six screws, called colt screws, passing through the holes in the base and firmly screwed into the floor, the screws passing quite through the plank. The screws were about half an inch in diameter and four inches long. Braces of slitwork two by three inches in size were notched on to the machine, and extended up and were nailed or spiked to the joist of the flooring above the machine. This machine was set up and annexed in the way described by said Stevens in pursuance of said vote. Said drill was adapted and designed for use in a machine-shop; and some similar machine would be necessary for a machine-shop designed to manufacture the machines said corporation was intending to manufacture. The drill could be removed and used in any machine-shop, but to remove it would occasion more or less splitting and injury to the joist of the floor to which the braces were nailed or spiked. After the drill was thus set up, said Stevens

used it about the manufacture of certain machines, but not about the business of said corporation, and it was never used by said corporation.

After the machinery including the drill was thus set up, Stevens applied to the plaintiff for a loan on said real estate. Officers of the plaintiff examined the property, and thereupon. on August 6, 1877, the plaintiff lent Stevens $5000, and took a mortgage to secure it on said real estate. The mortgage, after describing the land, contained these words: "with all the fixed and movable machiney and shafting and power in and upon said premises, including steam-engine and boilers and all other fixtures of any name and nature in and upon the same." The con dition of the mortgage was not performed, and the plaintiff duly took possession to foreclose, and was in possession at the time of filing the bill in this case. The defendant corporation claimed said drill, and intended to remove it. The plaintiff at the time of taking the mortgage had no knowledge of the state of the title to the drill as between Stevens and the defendant corporation, but supposed it belonged to Stevens, their officers seeing it in the shop annexed as aforesaid.

On the foregoing facts the plaintiff asked the judge to rule and find that the drill was a part of the realty and passed to the plaintiff by the mortgage. The judge declined so to rule and find, but ruled that the drill was not so attached to the real estate as to become a fixture and pass to the plaintiff bank under the mortgage, but was and is the property of the defendant company; and ordered a decree for the defendant.

The plaintiff appealed, and, at its request, the case was reported for the determination of the full court. If the ruling was correct, the decree was to be affirmed; otherwise, to be reversed.

*F. P. Goulding & A. J. Bartholomew*, for the plaintiff.

*W. S. B. Hopkins*, for the defendant. 1. The drill was fastened and braced to steady it when in use, and it could be removed with no other injury to the freehold than that caused by drawing nails or spikes from a joist. This injury would be trivial. There was no evidence that it was placed in the building "to carry out the obvious purpose for which it was erected, or to permanently increase its value for occupation." It was "not

essential to the enjoyment and use of a building as a manu-
factory, nor especially adapted to be used in it;" and "the
clear purpose of fastening it was to steady it for use, and not
to make it a permanent part of the building." The facts show
that the building was not built for a machine-shop, but "was
adapted and designed for a machine-shop or other manufactur-
ing purposes." It was certainly not essential to this machine-
shop, for this was built before it was ever thought of putting
the machine in. The result is, therefore, that the machine was
not realty, regarding either "the object, the effect or the mode
of annexation." *Pierce* v. *George*, 108 Mass. 78. *McConnell*
v. *Blood*, 123 Mass. 47.

2. The special circumstances under which it was placed in
the building show the machine to be personalty. The defend-
ant had owned its machinery for some time, had set it up once
elsewhere, and stored it as long as it could, waiting for encour-
agement to open its proposed manufacture of patented tools.
Stevens had a building vacant, and the defendant company, in
anticipation of hiring the shop, voted to send in the machinery
for free storage until the tenancy should commence, namely,
when it should begin to manufacture and pay rent. The com-
pany only proposed to hire one third of the lower story of the
building, with power. The company paid for moving the ma-
chines. It was never contemplated that any one but the com-
pany should use the machines, and it was intended that it should
use them as its own personal property, and in that place as a
tenant of Stevens.

The case is totally unlike the annexation of railroad iron, in
*Hunt* v. *Bay State Iron Co.* 97 Mass. 279, and of water-wheels,
in *Clary* v. *Owen*, 15 Gray, 522, and other cases of that charac-
ter. In those cases the contracts attending the annexation con-
templated that the owner of the land would become the owner
by purchase of the chattels, and they were put in place for his
use. In this case it was only contemplated that the premises
should be let to the owner of the chattels, and that it should
use them for its own purposes during a tenancy.

3. The plaintiff had no reason to suppose a machine so slightly
annexed to the building, and not specially adapted to or in use
in any business carried on there, was realty.

ENDICOTT, J.   The defendant company having purchased machinery, including this drill, to be used in the manufacture of a patented machine, made an arrangement with Stevens to hire his shop.   And, in anticipation of its occupancy, Stevens was authorized by the company to remove, and did remove, the machinery to his shop, and set it up ready for use.

In view of the character of the drill, the purpose for which and the manner in which it was annexed, we are of opinion that it became a part of the realty, as between mortgagor and mortgagee.   It was a large, heavy machine, from six to eight feet high, having a base of cast iron, and weighing about a ton.   It was firmly fastened to the floor, and was supported by braces attached to the flooring above.   It was adapted and designed for use in a machine-shop, was purchased by the company as a part of the machinery to be used in the manufacture of the patented machine, and it is found that this or a similar drill would be necessary for a machine-shop designed to manufacture the patented machine.

Having thus been placed on the premises by direction of the company, it passed to the plaintiff under its mortgage from Stevens as a part of the realty.   The plaintiff had no notice that the company owned the drill until after the foreclosure of its mortgage.   *Hunt* v. *Bay State Iron Co.* 97 Mass. 279, 283. *Thompson* v. *Vinton,* 121 Mass. 139.   *McConnell* v. *Blood,* 123 Mass. 47.   *Southbridge Savings Bank* v. *Exeter Works,* 127 Mass. 542.   *Smith Paper Co.* v. *Servin, ante,* 511.

*Decree for the plaintiff.*