ALFRED C. GAUNT *vs*. ALLEN LANE CO.

Franklin.      Opinion March 12, 1929.

*Ralph W. Crockett*, for plaintiff.
*C. N. Blanchard*,
*Frank W. Butler*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BARNES, PATTANGALL, JJ.

PHILBROOK, J.   On report.  Action in trover to recover damages for the alleged conversion of mill machinery.  Demand and refusal are conceded.  The property described in the plaintiff's declaration is as follows:

Twelve looms, including loom motors, harnesses, beams, shuttles, reeds, 82″25 harness 4 x 4 box, heavy worsted, with motors, 1 HP 550 volt, together of the value of seventy-two hundred dollars, one Universal Winder of the value of two hundred dollars, one 60KW generator and connection, of the value of eight hundred dollars, five motors, together of the value of six hundred·dollars, two

Houston sewing machines, together of the value of one hundred dollars, one 20th Century dryer, of the value of two thousand dollars, one piece dye kettle, of the value of fifty dollars, one power pump, of the value of fifty dollars.

For convenience and brevity of expression, we divide the above enumerated property into two groups, the first containing the twelve looms and motors of the alleged value of seventy-two hundred dollars, and the second containing all the remaining articles.

On July 1, 1922, and for a long time prior thereto, the defendant corporation was the owner of the East Wilton Woolen Mill, so-called, at East Wilton, Maine, with all buildings thereon, all machinery therein, and the water power therewith connected. On the above date the defendant conveyed all of said property to the Gledhill Woolen Company, receiving in payment a promissory note for the full amount of the purchase price, secured by a mortgage covering all the property conveyed. Both deed and mortgage were properly recorded in the Franklin County Registry of Deeds.

At the time of the sale the plaintiff, Gaunt, was owner of a majority of the capital stock of the Gledhill company, one of its directors, its treasurer and financial backer. He also held a controlling interest in a New York corporation known as Alfred C. Gaunt and Company.

On November 29, 1924, the Gledhill company gave a second mortgage of the property to the plaintiff, Gaunt, for the sum of fifteen thousand dollars, subject to the first mortgage given the defendant on July 1, 1922, and "subject to any lien or liens which the said Alfred C. Gaunt has on the looms and other machinery used in connection with the mill on said premises."

Between the dates of the first and second mortgages, the Gledhill company made changes in the mill machinery, substituting new for old, and particularly brought to the mill the looms and motors which are comprised in the so-called first group.

The Gledhill company failed to meet its obligations under the first mortgage, given to the defendant in July, 1922, and on July 7, 1927, the mortgagee began foreclosure of that first mortgage by publication, the date of the last publication being July 26, 1927. In the plaintiff's brief it is admitted that under this foreclosure proceeding, the Allen-Lane Company took possession of

the mortgaged property; and it is further admitted that all the items of machinery mentioned in plaintiff's writ were in the mill and in the possession of the defendant at the date of the writ, and still in its possession, with the exception of the Houston sewing machines, concerning which there is some dispute.

Under date of April 9, 1927, the plaintiff began foreclosure of the second mortgage by service of notice on the president of the Gledhill company.

Group I, of the property alleged to be personal property and as such converted by the defendant, will be first considered.

On September 1, 1922, about sixty days after the first mortgage was given to the defendant, and while the same was in full force and effect, Alfred C. Gaunt & Company, by conditional sale, conveyed the looms and motors mentioned in Group I to the Gledhill company. These looms and motors were immediately installed in the mill at East Wilton and attached to the building in such manner as to become part of the realty.

The instrument of conditional sale stipulated that the conditional vendee was to place the machinery in the East Wilton mill "and there to hold the same as the sole and exclusive property of the conditional vendor." This instrument was duly recorded in the office of the Town Clerk of Wilton. On April 6, 1927, the conditional vendor commenced foreclosure. There was no redemption and on August 11, 1927, long after the time for redemption had expired, Alfred C. Gaunt & Company sold the looms and motors to Alfred C. Gaunt, the plaintiff. The latter now claims that the steps taken, as above set forth, under ordinary circumstances, would give him perfect title so far as Group I is concerned. On the other hand, the defendant claims that this group became fixtures, lost their character as chattels, and being part of the realty passed to it under the first mortgage.

This raises the question of title to chattels between the mortgagee of real estate and the vendor of chattels sold to the mortgagor under a conditional sale, the sale being subsequent to the real estate mortgage and the chattels having been affixed to the realty. There are two well defined doctrines on the subject, one being directly opposed to the other. In some jurisdictions it has been held that the conditional sale is valid, and that the various articles

so sold retain their character as chattels, while in other jurisdictions the courts of last resort have reached a contrary result. The former doctrine is commonly known as the New Jersey rule, the leading case in support thereof being *Campbell* v. *Roddy*, 44 N. J. Eq., 244; 6 Am. St. Rep., 889; 14 Atl., 279, where the two doctrines are discussed at great length. The latter is known as the Massachusetts rule, now firmly established by the opinions of the court in that commonwealth as well as by those in other states which have adopted it. So far as numbers are concerned, the jurisdictions are more numerous in which the New Jersey rule obtains, but it should be noted that decisions supporting that rule emanate largely from the equity side of the court, not from the common law side. Indeed, the court in *Campbell* v. *Roddy*, supra, gives the following statement as a reason for the rule:

"It is difficult to perceive any equitable ground upon which the property of another, which the mortgagor annexes to the mortgaged premises, should inure to the benefit of a prior mortgagee of the realty. The real estate mortgagee had no assurance at the time he took his mortgage that there would be any accession to the mortgaged property. He may have believed that there would be such an accession, but he obtained no right, by the terms of his mortgage, to a lien upon anything but the property as it was conditioned at the time of its execution. He could not compel the mortgagor to add anything to it. So long, therefore, as he is secured the full amount of the indemnity which he took, he has no ground for complaint. There is, therefore, no inequity toward the prior real estate mortgagee, and there is equity toward the mortgagee of the chattels, in protecting the lien of the latter to its full extent so far as it will not diminish the original security of the former."

At an early date, in *Franklin* v. *Moulton*, 5 Wis., 1, citing *Corliss* v. *McLagin*, 29 Me., 115, decided in 1848, the Wisconsin court adopted the Massachusetts rule, but it is interesting to note that in *Fuller-Warren Co.* v. *Harter*, 101 Wis., 80, 85 N. W., 698, 84 Am. St. Rep., 867, that court said:

"The judicial policy of this state having been, established for nearly half a century, as indicated, it is considered that

we are not permitted to question it now. The opposite doctrine (the New Jersey rule) may be the most equitable. It is probably supported by the greater weight of authority if that is to be determined by the number of decisions. Possibly it may be by the better reasoning, though the indications, it is believed, from a study of the numerous cases that have dealt with the subject in recent years, are that it has been losing rather than gaining grounds. The tendency of courts is to fence it within as narrow limits as practicable."

As an example of this tendency, our attention has been called to *McFadden* v. *Allen*, 134 N. Y., 489, 32 N. E., 21, decided in 1892, where that court adopted the Massachusetts rule in its entirety, with the possible exception of where an interest in the accession to realty is reserved as security for purchase money. In all other cases it was distinctly held that a contract between a mortgagor and a third person, preserving the chattel character of property added to real estate as an improvement thereof during the life of the mortgage thereon, is ineffective as against the mortgagee unless he is a party to the transaction; and that the question of whether it can or can not be removed without injury to the realty is immaterial.

The invalidity of a contract between a mortgagor of realty and his vendor of chattels to be annexed, and which are annexed, to the mortgaged property, preserving the chattel character of the accession, has been maintained by the Federal Courts. *Phoenix Iron Works Co.* v. *New York Security & Trust Co.*, 83 Fed., 757; *Porter* v. *Pittsburg, etc.*, 120 U. S., 649; 122 U. S., 283, in which court the Massachusetts rule obtains. It may be of interest to the legal profession, at least, to say that in the Phoenix case, among those sitting on the bench were Justices Taft and Lurton, one of whom later became Chief Justice and the other an Associate Justice in the United States Supreme Court.

In effect the Massachusetts rule was adopted by our court in a very early case, *Smith* v. *Goodwin*, 2 Me., 173, decided in 1822, and the adoption amplified and emphasized by repeated decisions during the century which has elapsed since that time. We still adhere.

The Massachusetts rule has been already stated in *McFadden* v.

*Allen,* supra, and need not be repeated. In the case at bar, the mortgagee was not a party to the transaction whereby Group I was purchased by conditional sale, nor has the plaintiff shown by preponderating evidence that the mortgagee consented that Group I should be installed as chattels and retain chattel characteristics as distinguished from fixtures.

In discussing Group II, we make no reference to the Houston sewing machines since the evidence does not fairly preponderate in favor of the claim that they were in the mill when demand and refusal were made as prerequisites to this suit. The element of conditional sale does not exist in this group. The record abundantly shows that the articles enumerated in this group became fixtures under the modern rule of fixtures relating to mill machinery. They passed to the mortgagee by affixation and title thereto was complete when the mortgagee took possession of the real estate under foreclosure proceedings. *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass., 519; *Hawkins* v. *Hersey,* 86 Me., 394.

*Judgment for defendant.*