VORSEC COMPANY *vs.* JOHN GILKEY.

Franklin.     Opinion, January 17, 1934.

*John G. Marshall,*
*Fred H. Lancaster,* for plaintiff.
*Frank W. & Benjamin Butler,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J. Case reported to "Law Court for its determination upon so much of the evidence as is legally admissible."

Action of trover by the successor of a conditional sale vendor against a real estate mortgagee for alleged conversion of property described in the declaration of the writ as: "one 30 x 48 Vorcolne Ace Lo-Front Washer of the value of three hundred dollars; one

32 x 40 Vorcolne Junior Tumbler of the value of seven hundred and fifty dollars; one 26-inch Vorcolne Ace Extractor of the value of three hundred and fifty dollars; one 40-inch Vorcolne Drying Cabinet of the value of two hundred and fifty dollars; one $7\frac{1}{2}$ Horse Power Motor of the value of one hundred and twenty-five dollars; one 20 Horse Power Vertical Boiler of the value of two hundred and fifty dollars."

Plea, the general issue and for brief statement "that he is the holder of a mortgage on the real estate, in which the articles mentioned in the plaintiff's writ were placed. That the articles mentioned in said writ were annexed to and became a part of the mortgage security; that the defendant entered into the possession of said real estate for the purpose of foreclosing said mortgage and is now in possession thereof and that no part of said debt has been paid."

Demand is admitted.

The evidence warrants a finding of the following facts: On August 19, 1929, Irving I. Farmer deeded a certain lot of land in Farmington to Charles C. Stone and Chester P. Davis, who, in pursuance of arrangement made with one Albert S. Conant, erected a building on said lot to be leased to said Conant and occupied by him for the purpose of conducting a clothes cleaning business. Requiring money for the erection of this building, Stone and Davis on October 29, 1929, obtained a loan of $3,000 from the defendant, John Gilkey, no part of which has been paid, and gave him a "mortgage deed covering the said real estate," securing said loan.

By conditional sales contract dated October 2, 1929, but not recorded until January 6, 1930, Vorcolne Corporation, predecessor of plaintiff Vorsec Company, sold the property described in the writ to Conant; the contract containing this provision: "Title to said goods to remain in vendor until fully paid, part payments to be considered as paid for the use thereof." The building, constructed particularly for the use of Conant, was erected subsequently to the giving of the real estate mortgage and was leased by the mortgagors to Conant. The date of the lease does not appear in the case but from Plaintiff's Exhibit 1 we infer that it was given early in December, 1929. Said Exhibit also justifies the inference that the building was completed a short time before the giving of

the lease and that soon afterwards the machinery was installed by Conant, the lessee. The defendant had knowledge of the fact of the lease but not its contents. He knew that this machinery was being installed and made no objection thereto, but had no knowledge of the fact of giving the conditional sales contract or its provisions. Neither did he know that the purchase price of said machinery was not paid.

The lessee, Conant, commenced business March 4, 1930, and continued in it until May 10, 1932. Later Gilkey foreclosed his mortgage and took possession of said real estate.

All of this machinery was installed in the building in such a manner as to become part of the realty. *Gaunt* v. *Allen Lane Company*, 128 Me., 41, 145 A., 255. Its title is now to be determined as between the plaintiff, with rights of a conditional sale vendor, and the defendant, the real estate mortgagee, on the facts above stated.

Had these machines been purchased by the mortgagors, Stone and Davis, with a like provision in the contract of sale as to retention of title in the vendor, the vendor could not have asserted ownership successfully as against the real estate mortgagee in the absence of proof that the real estate mortgagee was a party to the transaction. Maine adopts the Massachusetts rather than the New Jersey rule and holds "that a contract between a mortgagor and a third person, preserving the chattel character of property added to real estate as an improvement thereof during the life of the mortgage thereon, is ineffective as against the mortgagee unless he is a party to the transaction; and that the question of whether it can or can not be removed without injury to the realty is immaterial." *Gaunt* v. *Allen Lane Company*, 128 Me., 41, 46, 145 A., 255, 257.

But in the instant case, the machines were not purchased and installed by the mortgagor but by Conant, the mortgagor's lessee. Is the result the same, then, notwithstanding this noted difference in the facts? We think it is.

In *Wight* v. *Gray*, 73 Me., 297, a frame building was erected by a husband on land of the mortgagor, his wife, and with her consent. The mortgagee, not a party to the transaction, brought an action of trespass *quare clausum* on account of the removal of this building, which required a determination of the respective rights of the

licensee of the mortgagor and the mortgagee. The mortgagee prevailed. The Court, in its decision, quoted with approval this statement from *Lynde* v. *Rowe*, 12 Allen, 100: "If, after the execution of a mortgage of real estate, fixtures are added by a tenant at will of the mortgagor, his right to remove them, after an entry by the mortgagee for the purpose of foreclosure, must be determined by the rule which prevails between mortgagor and mortgagee, and not by that which prevails between landlord and tenant."

In *Inhabitants of Andover* v. *McAllister*, 119 Me., 153, 109 A., 750, 751, a question of ownership of a church bell with tongue and tolling fork was determined. In that case it appeared that the Trustees of the Methodist Episcopal Church in the town of Andover erected a church building on a lot of land owned by the Trustees. While the church was in process of construction, a fund was raised by public subscription with which the bell with tolling fork was purchased, the understanding being that it was to be hung in the belfry of the church and to be used for public as well as church purposes. It was presented to the town and hung in the church upon the condition that it should be rung on all public occasions, never be removed from the town, should be controlled by the voters of the town, and should remain in the church building so long as the Methodist Society held together. The Society ceased to hold meetings and sold its church to the defendant, who took possession of the bell and refused to deliver it up to the town on demand, whereupon the town replevied it. The Court, refusing to apply the law as declared in *Peaks* v. *Hutchinson*, 96 Me., 530, 53 A., 38, which has since become ineffective by enactment of statute (R. S., Chap. 87, Sec. 39), adopted and declared the rule "more cognizant with reason and which accords with the great weight of authority elsewhere" and held: "That chattels attached to the realty in such a manner as to indicate they are fixtures will pass by deed or mortgage of the real estate to a purchaser or mortgagee without notice, notwithstanding an agreement, either express or implied, between the owner of the chattel and the owner of the realty that they are to remain personalty and shall not become a part of the real estate." Citing *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass., 542; *Thompson* v. *Vinton*, 121 Mass., 139, and many cases from other jurisdictions.

In *Thompson* v. *Vinton*, supra, a new wheel, shaft and head gear were put into a mill, not by the mortgagor but by co-partners, of whom one was the mortgagor. Decision was given for the real estate mortgagee, the Court saying: "When the new wheel, shaft and head gear were put into the mill, although they were to be paid for by F. E. Vinton and Purdy, who were then co-partners, they must be considered as annexed by the mortgagor, Purdy. . . . It was not in the power of the mortgagor, by any agreement made at that time, or subsequently when he leased the property to Vinton, to bind the mortgagee to treat them as personalty." Citing *Hunt* v. *Bay State Iron Company*, 97 Mass., 279, 283.

In *Southbridge Savings Bank* v. *Exeter Machine Works*, supra, a boiler was installed in a machine shop by Stevens, the mortgagor, this boiler having been delivered to Stevens to be used on trial with the agreement that it should remain the personal property of the defendant until it was paid for. The Court held that such agreement "would prevent Stevens from claiming it as a part of the realty. It would also prevent any vendee, or the mortgagee, who took with notice of the agreement." It then enunciated the Massachusetts rule that where the "personal property is sold for the purpose of being annexed to the realty, and it is so annexed, an agreement between the seller and the buyer that it shall not become a part of the realty, but shall remain the personal property of the seller, will not bind or affect the vendee or mortgagee without notice. Notwithstanding such agreement, the property will pass to such vendee or mortgagee as a part of the realty."

In *Southbridge Savings Bank* v. *Stevens Tool Company*, 130 Mass., 547, the defendant company having purchased machinery, including a drill in controversy, to be used in the manufacture of a patented machine, made an arrangement with Stevens, the mortgagor, to hire his shop. In anticipation of its occupancy, Stevens was authorized to set the machinery up in his shop. The Court held that the drill, having been placed on the premises by direction of the defendant company, passed to the plaintiff, the mortgagee, as a part of the realty, the plaintiff having had no notice that the company owned the drill until after the foreclosure of its mortgage.

Again, in the same State, in *Meagher* v. *Hayes*, 152 Mass., 228,

25 N. E., 105, it was held that a building erected by license of the mortgagor without the mortgagee's consent did not remain personal property but was covered by the mortgage.

The above cases from both Maine and Massachusetts courts indicate that even though there be an agreement that the property installed remain chattel, and even though the installation is not by the mortgagor but by the licensee of or the contractor with the mortgagor, that the annexation is considered to be as made by the mortgagor, so that the property so annexed becomes real estate subject to a prior real estate mortgage, unless the mortgagee has knowledge of such an agreement and is a party to the transaction. In the case at bar, the defendant, the mortgagee, was not a party to the transaction and had no such knowledge.

The plaintiff, however, relies strongly upon *Paine* v. *McDowell*, 71 Vt., 28, 41 A., 1042, 1043, reported in 41 Atl., 1042, as holding that where the mortgagee allows the mortgagor to remain in possession of the real estate and has knowledge of the renting of the premises by the mortgagor to a tenant, that that is enough to show consent by the mortgagee to that which is done by the mortgagor, and, hence, that the mortgagee is thus precluded from preventing the removal of machinery placed on the premises by another who, by agreement with the lessee, reserves the right so to remove. A critical examination of the facts in that case does not bear out the plaintiff's contention, so far as it may be applied to the facts in this case.

In the Vermont case, the plaintiff, called the oratrix, representative of the deceased, petitioned in chancery to foreclose the rights of the defendant in and to certain real estate on the following facts: The intestate owned a lot in Lowell, Vermont, on which lived one of the defendants, Leonard McDowell. The intestate contracted to sell the lot to McDowell and took his notes for the purchase price. The Court held that this contract gave McDowell an equity of redemption in the premises and made the transaction in legal effect practically the same as a deed and mortgage back. Subsequently the intestate died, and McDowell, in the position of the mortgagor and in possession of the lot, leased a portion of it to one Tucker, another defendant, the leased part of the lot to be used by Tucker for the purpose of building a mill thereon. Tucker

thereafter built the mill and installed certain machinery in it. The oratrix knew of this lease and made no objection thereto. Tucker knew that the lot was under mortgage. The oratrix claimed that the mill and machinery became a part of the real estate, subject to the mortgage, and so that Tucker had no right to remove the mill or the machinery. Tucker claimed to the contrary and that the mill and the machinery retained their character of chattels, not only as to McDowell but as to the oratrix, and hence he had a right to remove both. In addition Tucker also claimed that he was entitled to have invoked the doctrine of trade fixtures.

The Vermont Court, in a brief sentence, denied Tucker any rights under this doctrine, saying: "The doctrine of trade'fixtures applies only between landlord and tenant and as Tucker is not tenant to the oratrix it does not apply as to her."

The other claim set up by Tucker was allowed and he was permitted to remove the mill and the machinery. This, however, in our judgment, was due to the fact that Vermont is one of the states that adopts the New Jersey and not the Massachusetts rule. The Court said, on page 1044: "It is true, as between the estate and McDowell, all fixtures are part of the land, and go with it. This is the general rule between mortgagor and mortgagee in all jurisdictions where a mortgage conveys title; and in some of them (notably Massachusetts) no exception to the rule is made in favor of third persons, such as conditional vendors and chattel mortgagees, although the annexations are made after the execution of the mortgage of the land, for they say that the mortgagor can not bind the mortgagee without his consent, by an agreement that the annexations may be removed in a certain event. *Clary* v. *Owen*, 15 Gray, 522; *Hunt* v. *Iron Company*, 97 Mass., 279; *Meagher* v. *Hayes*, 152 Mass., 228, 25 N. E., 125. But we have made an exception in favor of conditional vendors of chattels sold to the mortgagor, and by him annexed after the execution of the mortgage of the land, and held that they do not become fixtures, as between the conditional vendor and the prior mortgagee, but retain their identity and character as chattels, and that the vendor's right thereto is superior to that of the mortgagee, and may be asserted against him; and this is put upon the ground that the mortgagee has parted with nothing on the faith of the annexations

being a part of the realty, and therefore has no reason to complain. *Davenport* v. *Shants*, 43 Vt., 546; *Buzzell* v. *Cummings*, 61 Vt., 213, 218, 18 Atl., 93; *Page* v. *Edwards*, 64 Vt., 124, 23 Atl., 917."

The Vermont case, thus, having specifically stated that it did not adopt the Massachusetts rule and that Vermont made an exception in favor of the conditional sale vendor, then further said: "The exception carried to its logical result, exempts *the annexations in question* from the mortgage." It is to be noted that the annexations in question in the Vermont case were those made not by the mortgagor but by Tucker, the lessee of the mortgagor. Further continuing, the Court said: "For it makes no difference whether the annexations are sold conditionally, or not sold at all. The same reason exists in both cases for treating them as chattels between the mortgagee and the owner, namely, the mortgagee is not misled by the annexations and parts with nothing on the faith of them, and, therefore, does not stand as a bona fide purchaser."

Thus it will be seen that the decision reached in the Vermont case in favor of the lessee of the mortgagor is based solely on the extension of the doctrine of the Vermont exception to the general rule and without the exception, which exception does not obtain in Maine, no such result would have been reached.

We think the Vermont case in its reasoning sustains in part the contention of the defendant in this case, namely, that annexations by the lessee of the mortgagor are to be regarded as though made by the mortgagor, for in the Vermont case the reasoning of the Court is that as under its exception, the conditional sale vendor could hold the chattels as against the real estate mortgagee, where the annexations are made by the mortgagor (and that is not law in Maine), so the conditional sale vendor may prevail over the real estate mortgagee, even though the annexations were not made by the mortgagor but by his lessee.

The Vermont case is further distinguished from the facts in the instant case is this: That in that case the mortgagee knew that the whole lot before the erection of the building was worth only $300, that the building erected was worth $1,000, and the machinery installed $5,000, and so there was good reason in the Vermont case to infer knowledge upon the part of the mortgagee that there was an agreement for removal. Failure, then, to object by one possessed

of such knowledge might have been strong evidence to show waiver of the rights that the mortgagee otherwise would have had. In fact, the Court said: "Hence I, for one, do not see why the case might not well be put on the ground of assent by her."

In the case at bar, we have found, as above stated, that the mortgagee did not consent to and was not a party to the transaction.

The lessee's rights of possession are wholly dependent upon his contract with the mortgagor, his lessor. "The doctrine is well settled, that, although the mortgagor is to be regarded as owner of the estate as to all other persons than the mortgagee, yet that he can not create a tenancy after the execution of a mortgage, which will be valid against the mortgagee, unless the mortgagee chooses to recognize the tenant as such." *Lynde v. Rowe, et als.*, 12 Allen, 100, 101.

In *Hunt v. Bay State Iron Company, et als.*, 97 Mass., 279, 283, the Court said: "Nor do we suppose that a mortgagor in possession is competent to bind existing mortgagees by any arrangement to treat as personalty annexations to the freehold. The legal character of the rails when once laid down is determined by the law to be that of real estate. Mortgagees, as well as all other parties in interest, are entitled to the benefit of this rule of law, which can be taken from them only by their own waiver."

It seems to us, then, necessarily to follow that if a mortgagor, rightfully in possession, so far as the mortgagee is concerned, can not as against the mortgagee remove fixtures to whose annexation the mortgagee is not a party, the lessee may not, his right being in no way superior to that of the mortgagor. Unless and until the mortgagee recognizes the lessee, there is no privity whatsoever between the mortgagee and the lessee. To allow the lessee of the mortgagor to have greater rights than the mortgagor, who has privity with the mortgagee, can not be justified, either on legal or equitable principles. Neither should a conditional sales vendor be held to have a greater right to retain title to a chattel and to remove the same, which he permits to be attached as a fixture to real estate, when he is dealing with a lessee than when dealing with a mortgagor of the real estate. Justice will be the better accomplished, would the conditional sale vendor obtain such right of removal, to compel him to inform the real estate mortgagee of such proposed an-

nexation, obtain his consent, and thus make him a party to the transaction, rather than to subject the mortgagee, not such a party, to the physical interference with and damage to his real estate security with losses attendant upon the same.

In conclusion, therefore, by this decision, we extend the rule declared in *Gaunt* v. *Allen Lane Company*, 128 Me., 41, 145 A., 255, and hold that a contract between a lessee of a mortgagor and a third person preserving the chattel character of the property added to real estate as an improvement during the life of the mortgage thereon is ineffective as against the mortgagee, unless he is a party to the transaction.

*Judgment for defendant.*