**In re Bruce E. LADD, Donna V. Ladd, Debtors.**

**Dennis G. BEZANSON, Trustee**

**v.**

**KENNEBUNK SAVINGS BANK, Bruce E. Ladd, Donna V. Ladd, Town of Kennebunkport, Defendants.**

**Bankruptcy No. 281–00545. Adv. No. 282–0049.**

United States Bankruptcy Court, D. Maine.

July 6, 1982.

---

7. *Pioneer Furnace* and *Daas* were decided prior to the adoption of the Code.

Steven Cope, Portland, Me., for Ladds.

Kathleen Barry, Portland, Me., for Town of Kennebunkport.

David Cullenberg, Kennebunk, Me., for Kennebunk Sav. Bank.

Dennis G. Bezanson (Trustee), S. Portland, Me., pro se.

### MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

The trustee has brought this Complaint (1) to determine the validity of defendant Kennebunk Savings Bank's (Bank) security interest in debtors' manufactured housing unit; (2) to disallow debtors' claimed exemption in both the housing unit, and the real property upon which it is located; and (3) for authority to sell the housing unit and real property free and clear of all liens and interests. A trial was held on March 18th, and all parties have had the opportunity to submit briefs.

The Court finds the following facts: In 1980, the Ladds owned a parcel of land in Kennebunkport. In August, 1980, they arranged to purchase a new manufactured home, contingent upon financing. The Ladds borrowed $18,500 from Kennebunk Savings Bank, granting the Bank as security a "Mortgage Deed" on the land and a "Chattel Mortgage" on the manufactured home. The home was physically placed on the Ladds' lot before the mortgages were signed. The Bank recorded the Mortgage Deed in the York County Registry of Deeds on October 24, 1980, and filed a financing statement on November 7, 1980 with both the Secretary of State and the York County Registry of Deeds. The description of the property covered in the financing statement states:

One (1) Oxford Model, Burlington mobile home Length—66′, Width—14′, Serial number M 1757–GJ.

No description of the real estate upon which the home is located or the location of the home is included in the financing statement.

The manufactured home rests upon cement blocks (there is no foundation). The home's undercarriage is still in place. It is attached by bolts to two I-beams, and is easily removable. The wheels were removed upon delivery. A well has been drilled; septic system and chimney installed; patio, outdoor fireplace, and outbuildings built; flagpole erected; and landscaping done at the site. An appraiser testified that the value of the home and land together is $31,000. The home alone was valued at $21,000, not including the cost of moving it. The land alone was valued at $7,500.

■ The trustee first contends that the financing statement fails to meet the requirement of Me.Rev.Stat.Ann. tit. 11, § 9–402(1) that "if the collateral is a mobile home as defined in Title 10, section 1402, subsection 2, the description of collateral shall include the location designated by the debtor in the security agreement[1] as the place at which the mobile home is, or is to be, located." In 1978 when that requirement was enacted (see P.L. 1977, c. 702, § 1), Me.Rev.Stat.Ann. tit. 10, § 1402(2) defined a "mobile home" as

a structure, transportable in one or more sections, which is 8 body feet or more in width and is 32 body feet or more in length, and *which is built on a permanent chassis* and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities. . . .

(Emphasis added). In contrast, *id.* § 9002(11) (repealed by P.L. 1981, c. 152, § 7) defined a "modular home" as

a structure which is a type of manufactured housing, transportable in one or more sections, *which is not constructed on a permanent chassis* and is designed to be used as a dwelling on a foundation when connected to required utilities. . . .

(Emphasis added). "Permanent" is defined as "fixed and changeless; lasting or meant to last indefinitely." *The American Heritage Dictionary of the English Language,* 976 (1973). The evidence shows that the chassis, in this case, is attached to the body of the home by bolts to two I-beams, and is easily removable. The parties presented no evidence of trade standards or custom. On the evidence before it, the Court concludes that the Ladds' home does not have a permanent chassis, and, therefore, is not a mobile home as defined in Me.Rev.Stat.Ann. tit. 10, § 1402(2).

■ The trustee next contends that the Ladds' home is a fixture subject to the "fixture filing" requirements of Me.Rev. Stat.Ann. tit. 11, § 9–313.[2] This court need not decide that question, for, even assuming that the Ladds' home is a fixture, it is collateral for the Bank's loan pursuant to the real estate mortgage.[3]

■ Section 9–313(3) provides: "This Article [Me.Rev.Stat.Ann. tit. 11, §§ 9–101 *et seq.*] does not prevent creation of an encumbrance upon fixtures pursuant to real estate law." The Ladds gave the Bank a mortgage deed covering their lot of land in Kennebunkport

Together with all heating furnaces and boilers, oil burners and attachments thereto, heaters, water tanks, mantels, gas and electric light fixtures, screens,

---

1. The location designated in the Chattel Mortgage is "Old Cape Road Kennebunkport, Maine."

2. For an interesting discussion of Maine law concerning when buildings are realty or removable fixtures, see *Sutton v. Frost,* 432 A.2d 1311 (Me.1981). Mobile homes have been held to be fixtures subject to the requirements of UCC § 9-313. *See, e.g., Fink v. Wemco Corp.,* 4 B.R. 741 (Bkrtcy.W.D.N.Y.1980); *Hartford Na-*

*tional Bank & Trust Co. v. Godin,* 137 Vt. 39, 398 A.2d 286 (1979).

3. If the Court were to conclude that the Ladds' home was personalty, then the bank would have a perfected security interest via the UCC–1 financing statement filed with the Secretary of State pursuant to Me.Rev.Stat.Ann. tit. 11, §§ 9–401, 9–402.

storm doors and windows, screen doors, window shades, awnings, and all other fixtures of whatever kind or nature at present contained in said buildings and hereinafter placed therein prior to the full payment and discharge of this mortgage, which are hereby agreed to be a part of the mortgaged real estate.

This mortgage was properly recorded on October 24, 1980 in the York County Registry of Deeds, thereby perfecting the Bank's security interest in the realty. *See In re Cushman Bakery*, 526 F.2d 23, 28, (1st Cir. 1975) *cert. denied* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976); Me.Rev.Stat. Ann. tit. 33, § 201. It is the general rule that where annexation of chattels to land is such as to make them fixtures, in the absence of an agreement to the contrary, the fixtures are subject to a mortgage. *See Chase v. Wingate*, 68 Me. 204, 206 (1878). It has been held that even fixtures attached to realty *subsequent* to a mortgage pass to the mortgagee by affixation. *Gaunt v. Allen Lane Co.*, 128 Me. 41, 145 A. 255 (1929). Moreover, a person who purchases fixtures then annexed to mortgaged property is normally held to have taken them burdened with the mortgage lien. 35 Am.Jur.2d, *Fixtures* § 53 (1967). This mortgage deed contains no agreement that any fixtures upon the land would *not* be covered by the mortgage. *Cf. Sims v. Williams*, 441 S.W.2d 385, 389 (Mo.App.1969) *quoting Rogers v. Crow*, 40 Mo. 91, 96–97. In the absence of an agreement to the contrary, the general rule applies.

■ Me.Rev.Stat.Ann. tit. 11, § 9–402(6) states:

A mortgage is effective as a financing statement filed as a fixture filing from the date of its recording if the goods are described in the mortgage by item or type, the goods are or are to become fixtures related to the real estate described in the mortgage, the mortgage complies with the requirements for a financing statement in this section and the mortgage is duly recorded. No fee with reference to the financing statement is required other than the regular recording

and satisfaction fees with respect to the mortgage.

Here the mortgage deed refers to buildings and to fixtures of whatever kind or nature contained therein. The trustee notes that the mortgage refers to "said buildings," but no previous reference to buildings appears in the mortgage. He further argues that the Ladds' home is not a "building." It seems clear from the mortgage, however, that the parties intended it to cover any and all fixtures attached to the Ladds' lot. Furthermore, Section 9–402(6) only requires description by "type." The court finds that the description "buildings" sufficiently describes the Ladds' home, and that the reference to "said buildings," if in error, is not seriously misleading. *See* Me.Rev.Stat. Ann. tit. 11, § 9–402(8) (financing statement may be effective even though it contains minor errors which are not seriously misleading). It appears that the mortgage meets the requirements of *id.* § 9–402(6). The court concludes that the Bank has a secured interest in the Ladds' home and land.

Assuming that the Ladds' home is personal property, rather than a fixture, the trustee argues that pursuant to Me.Rev.Stat. Ann. tit. 14, § 4422(1), the Ladds are entitled to a homestead exemption solely in their home, not in the land upon which it is located. Section 4422(1) provides a debtor with an exemption in "real *or* personal property that the debtor . . . uses as a residence." (Emphasis added). The trustee contends that use of the disjunctive indicates that the Legislature intended to limit the homestead exemption to either realty or personalty, but not both. Section 4422(1) was enacted by P.L. 1981, c. 431. In ascertaining the Legislature's intent in enacting section 4422(1), the "Statement of Fact" attached to the legislative document introducing P.L. 1981, c. 431 is a proper and compelling aid. *In re Breau*, 17 B.R. 697, 698 (Bkrtcy.D.Me.1982). The Statement of Fact states in part:

The purposes of this new draft are generally to:

.        .        .        .        .

2. Adopt the existing federal exemptions except where comparable state exemptions are more generous....

L.D. 1642, 110th Legislature (May 21, 1981). Section 4422(1) tracks the language of 11 U.S.C. § 522(d)(1)—clearly the Legislature intended to adopt the existing federal homestead exemption.[4]

■ The federal homestead exemption was derived from the Uniform Exemptions Act, which provided that a homestead exemption could be claimed in real or personal property, *or both. In re Saylor*, 7 B.R. 86, 87 (Bkrtcy.S.D.Ohio 1980). Furthermore, 11 U.S.C. § 102(5) specifically provides that the word "or" when used in title 11 is *not* exclusive. Thus, the federal exemption would permit a debtor to claim his homestead exemption in both realty and personalty. In accordance with the expressed intent of the Maine Legislature, this Court interprets Me.Rev.Stat.Ann. tit. 14, § 4422(1) similarly. *See In re Saylor.*

It appears that the debtors are entitled to an exemption of $15,000, while the Bank has a security interest in excess of $20,000. The highest value testified to for the property was $31,000. Thus, it is unlikely that the trustee would realize any proceeds for the estate were he to sell the property. Authority to sell is denied.

In summary, the Bank has a valid security interest in the Ladds' home and land. The trustee's objection to the debtors' homestead exemption and the trustee's application to sell free and clear of liens and interests are denied.

Enter order.

**4.** The trustee correctly points out that the Maine Legislature did limit a debtor's ability to use any unused amount of the homestead exemption to exempt *other* property. *Compare* Me.Rev.Stat.Ann. tit. 14, § 4422(16) *with* 11 U.S.C. § 522(d)(5). There is no reason to assume that by limiting the "pour-over" provision the Legislature also intended to limit the scope of the homestead exemption itself.