**LEWISTON BOTTLED GAS COMPANY**

v.

**KEY BANK OF MAINE.**

Supreme Judicial Court of Maine.

Argued Sept. 4, 1991.
Decided Jan. 3, 1992.

Joanne L. Simonelli (orally), Isaacson & Raymond, Lewiston, for plaintiff.

Lauren C. Folsom (orally), Westbrook, Nicholas Lanzilotta, Colby & Lanzilotta, P.A., Augusta, Dennis C. Sbrega, Preti, Flaherty, Beliveau & Pachios, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ.

CLIFFORD, Justice.

Plaintiff Lewiston Bottled Gas Company (LBG) appeals from an order of summary judgment entered by the Superior Court (Androscoggin County, Perkins, J.) in favor of defendant Key Bank of Maine in this declaratory judgment action brought to determine the rights of the parties with respect to ninety heating and air-conditioning units installed in the Grand Beach Inn at Old Orchard Beach. We agree with the Superior Court that Key Bank's mortgage gives it priority over LBG's purchase money security interest in the units and we affirm the judgment.

In July 1986, Key Bank loaned $2,580,000 to William J. DiBiase, Jr. The loan was secured by a mortgage on the real estate owned by DiBiase located on East Grand Avenue in Old Orchard Beach. The mortgage, which covered after-acquired fixtures, was properly recorded in the York County Registry of Deeds. On June 10, 1987, DiBiase incorporated Grand Beach Inn, Inc. (Grand Beach) for the purpose of constructing and operating the Grand Beach Inn on DiBiase's East Grand Avenue property. DiBiase was the president and sole shareholder of Grand Beach and at all

relevant times was the owner of the property.[1]

On June 15, 1987, Grand Beach contracted to purchase ninety heating and air-conditioning units from LBG.[2] The contract provided that the units would remain the personal property of Grand Beach notwithstanding their attachment to the real property. On June 16, Grand Beach granted to LBG a purchase money security interest in the ninety units. Financing statements[3] disclosing the security interest and identifying the debtor as "Grand Beach Inn, Inc., William J. DiBiase, Jr., President" and describing the real estate upon which the units were located as "Grand Beach Inn, East Grand Avenue, Old Orchard Beach, ME 04064" were filed with the Secretary of State and also recorded in the York County Registry of Deeds. In each place, they were indexed under the name "Grand Beach Inn, Inc." Nothing, however, was indexed under DiBiase's name. In September and October 1987, the units were installed in the exterior walls of each room in the Inn.

On June 29, 1987, Key Bank made a second loan to DiBiase secured by a second mortgage on the same property, also covering after-acquired fixtures and also properly recorded. The title search undertaken by Key Bank in the York County Registry of Deeds prior to the execution of the mortgage failed to disclose the financing statement and the existence of LBG's security interest in the units because LBG's financing statement was indexed under the name "Grand Beach" even though DiBiase was the record owner of the property at the time.

In May 1989, Key Bank foreclosed on both its mortgages. LBG was not joined as a party-in-interest because Key Bank was unaware of LBG's interest in the units until after the foreclosure was commenced. The parties agreed to allow the foreclosure to proceed and to litigate the issue of title to the heating and air-conditioning units later. Key Bank was the successful bidder at the foreclosure sale. LBG then filed the present complaint against Key Bank seeking a declaratory judgment that its purchase money security interest in the units had priority over the interest of Key Bank.[4] The Superior Court granted summary judgment to Key Bank concluding that the heating and air-conditioning units were fixtures and that Key Bank's properly recorded mortgages had priority over LBG's unperfected security interest. This appeal followed.

## I.

[Summary] [j]udgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any ... show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.

M.R.Civ.P. 56(c). Although the parties differ as to the legal conclusions to be drawn from the facts, neither contends that there is any serious dispute as to any of the relevant facts in this case. Therefore, Key Bank's motion for summary judgment was appropriately entertained by the Superior Court.

## II.

### *Units as Fixtures*

■ 11 M.R.S.A. § 9–313(1)(a) (1964 & Supp.1991) provides that "[g]oods are 'fixtures' when they become so related to particular real estate that an interest in them arises under real estate law." That interest arises when the property is (1) physically annexed to the real estate, (2) adapted to the use to which the real estate is put, that is, the personal and real property are unit-

---

1. DiBiase did convey title to the real estate to Grand Beach in May 1988.

2. The units operate on liquified propane gas (LP gas) that LBG is in the business of selling.

3. *See* 11 M.R.S.A. § 9–402 (Supp.1991).

4. In separate counts, LBG also sought damages for conversion and for Key Bank's failure to join it as a party-in-interest in the foreclosure proceeding.

ed in the carrying out of a common purpose, and (3) annexed with the intent to make it part of the realty. *Boothbay Harbor Condominiums, Inc. v. Department of Transp.*, 382 A.2d 848, 854 (Me.1978) (citing *Bangor–Hydro Elec. Co. v. Johnson*, 226 A.2d 371, 378 (Me.1967)).

■ The evidence compels a conclusion that, under the first prong of the three-part fixture test, the units were physically annexed to the real estate. The heating and air-conditioning units were installed when the Inn was under construction and are part of the walls of the building. The units are attached by bolts and although they could be removed, their removal would create a large hole in the walls of each room. *See Roderick v. Sanborn*, 106 Me. 159, 162, 76 A. 263 (1909) (property need not be permanently fastened to realty to be physically annexed).

As to the second prong of the test, it is undisputed that the units, although they are catalogue items and not specially made for the Grand Beach Inn, were adapted to the use of the real estate as the Grand Beach Inn. The real estate was designed and built as an inn to accommodate overnight guests. The heating and air-conditioning units help create a liveable atmosphere for those guests by providing heat and cooling to the rooms. The personal and real property, therefore, are united in the carrying out of a common enterprise. *See Bangor–Hydro*, 226 A.2d at 376. The fact that the units are catalogue items, and not custom-made, does not preclude them from being fixtures.

The intent of the person annexing the personal property to the real estate is the third and most important of the three prongs of the fixture test. *Bangor–Hydro*, 226 A.2d at 377. LBG contends that summary judgment was improperly granted to Key Bank because the agreements between DiBiase and LBG granted to LBG a purchase money security interest in the units and expressly stated that the units would remain personal property and there-

fore demonstrated DiBiase's intent that the units remain personal property. We disagree.

■ In determining the intent of the parties as to whether a chattel annexed to real estate becomes a fixture, it is not the hidden subjective intent of the person making the annexation that must be considered but rather "the intention which the law deduces from such external facts as the structure and mode of attachment, the purpose and use for which the annexation has been made and the relation and use of the party making it." *Bangor–Hydro*, 226 A.2d at 378. The agreement DiBiase made with LBG to have the heating and air-conditioning units remain personal property cannot be considered against Key Bank on the fixtures issue because Key Bank was not a party to those agreements and was unaware of them. *Vorsec Co. v. Gilkey*, 132 Me. 311, 314, 170 A. 722 (1934); *Gaunt v. Allen Lane Co.*, 128 Me. 41, 46, 145 A. 255 (1929).

The objective manifestation of intent in this case, as evidenced by the physical annexation of the units to the walls of the building and their adaption to the use of the real estate as an inn, leaves no genuine dispute that the units are fixtures and part of the Grand Beach Inn real estate.

### III.

### *LBG'S Failure to Perfect its Security Interest*

■ Because the heating and air-conditioning units were fixtures and part of the real estate, they became subject to Key Bank's mortgages pursuant to section 9–313. Key Bank's first mortgage takes priority over LBG's security interest in the units unless LBG's security interest falls within one of the exceptions found in section 9–313.[5] 11 M.R.S.A. § 9–313(7) (Supp. 1991). The only relevant exception in this case is section 9–313(4)(a), which states:

(4) A perfected security interest in fixtures has priority over the conflicting

---

5. LBG contends that Key Bank consented to the transaction within the meaning of 11 M.R.S.A. § 9–313(5)(a). There is no evidence of consent by Key Bank and the contention is without merit.

interest of an encumbrancer or owner of the real estate where:

(a) The security interest is a purchase money security interest, the interest of the encumbrancer or owner arises before the goods become fixtures, the security interest is perfected by a fixture filing before the goods become fixtures or within 10 days thereafter, and the debtor has an interest of record in the real estate or is in possession of the real estate.

The security interest of LBG was a purchase money security interest. 11 M.R.S.A. § 9–107 (1964). The record clearly demonstrates, however, that it was not properly perfected and does not otherwise come within any recognized exception that would give it priority over Key Bank's first mortgage.[6]

A security interest is perfected when it has attached[7] and all of the applicable steps required for perfection have been taken. 11 M.R.S.A. § 9–303(1) (1964).[8] To perfect a security interest in a fixture, the secured party must file a "fixture filing." "A 'fixture filing' is the filing in the office where a mortgage on the real estate would be filed or recorded of a financing statement covering goods which are or are to become fixtures and conforming to the requirements of section 9–402, subsection (5)." 11 M.R.S.A. § 9–313(1)(b) (Supp. 1991). Section 9–402(5) (Supp.1991) requires that, in addition to the general requirements for financing statements set forth in section 9–402(1) (the name and signature of the debtor, the name and address of the secured party and a description of the collateral), the fixture filing must contain a description of the real estate and, if the debtor does not have an interest of record in the real estate, "the financing statement must show *the name of a record owner.*" 11 M.R.S.A. § 9–402(5) (emphasis added).[9]

In this case, LBG's financing statement was correctly filed in the York County Registry of Deeds, identified the debtor as "Grand Beach Inn, Inc., William J. DiBiase, Jr., President," and contained a description of the real estate that we assume is adequate. Because it failed to identify DiBiase as the record owner of the property, however, the financing statement does not comply with section 9–402(5).

▮ As a general rule, a financing statement is sufficient if, in all the circumstances, the filing would give a title searcher sufficient notice to justify placing a duty upon the searcher to make further inquiry concerning the possible lien. *In the Matters of Reeco Elec. Co.*, 415 F.Supp. 238, 240 (D.Me.1976). In this case, the financing statement was indexed under "Grand Beach Inn, Inc." A title searcher would not be expected to check the index for "Grand Beach Inn, Inc." at a time when the property is owned by DiBiase. Because LBG failed to perfect its security interest in the heating and air-conditioning units pursuant to section 9–402(5), the rights of

---

**6.** Because LBG's security interest, earlier in time than Key Bank's second mortgage, was not properly perfected, Key Bank had no notice of the security interest, and the second mortgage would have priority. Key Bank does not have *to rely on its second mortgage,* however, because there was a deficiency judgment on the first mortgage.

**7.** 11 M.R.S.A. § 9–203(1) (Supp.1991) provides in pertinent part:

(1) [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) [T]he debtor has signed a security agreement which contains a description of the collateral . . .; and

(b) Value has been given; and

(c) The debtor has rights in the collateral.

There is no dispute that LBG's purchase money security interest attached.

**8.** 11 M.R.S.A. § 9–303(1) (1964) provides:

(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in sections 9–302, 9–304, 9–305 and 9–306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.

**9.** 11 M.R.S.A. § 9–402(5) provides in pertinent part:

(5) [A] financing statement filed as a fixture filing . . . must show that it covers this type of collateral and the financing statement must contain a description of the real estate. If the debtor does not have an interest of record in the real estate, the financing statement must show the name of a record owner.

Key Bank as mortgage holder of the real estate to which the units are affixed take priority over LBG's unperfected security interest.[10]

The entry is:

Judgment affirmed.

All concurring.

**10.** LBG also contends that summary judgment was improperly rendered against it on its claim for damages arising from Key Bank's failure to name LBG as a party-in-interest in the foreclosure proceeding. That contention is without merit. In order to be a party-in-interest requiring joinder in Key Bank's foreclosure action against DiBiase, LBG's security interest in the property affixed to the Old Orchard Beach real estate would have to be properly reflected in the indices of the York County Registry of Deeds. 14 M.R.S.A. § 6321 (Supp.1990). Because the financing statement was recorded and indexed under "Grand Beach Inn, Inc." and not under "DiBiase," the owner of the real estate at the time the security interest was given, and because it was never re-recorded thereafter, LBG was not such a party-in-interest.